## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                                   **1:16-cr-00099-WSD-LTW**

**BENNETT L. KIGHT,**

                           **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Bennett L. Kight's ("Kight")

Motion to Dismiss the Indictment [35] ("Motion").

## I.    BACKGROUND

      A.    Summary of Allegations[1]

            1.    Count One: Mail Fraud

Count One alleges that Defendant committed mail fraud in connection with a

parcel of real property.  Defendant Bennett L. Kight was a licensed attorney in the

State of Georgia with an office in Atlanta, Georgia.  ([15] ¶ 1).  Kight personally

represented an individual referred to as F.B. and various members of F.B.'s family.

---

[1]      Allegations in an indictment are treated as true when reviewing Rule 12(b) motions to dismiss.  See U.S. v. Sharpe, 438 F.3d 1257, 1259 (11th Cir. 2006).

(Id. ¶ 2).  Kight also managed and oversaw various trusts, investments, entities, and assets owned and held for the benefit of F.B. and her family.  (Id.).

### i.    Scheme and Artifice to Defraud

In January 2006, Kight, in managing F.B.'s assets, facilitated a transaction, purportedly for the benefit of F.B., to purchase residential real estate in Atlanta, Georgia.  (Id. ¶ 3).  The property, located at 400 Glen Arden Place ("the Glen Arden property"), was Kight's former residence.  (Id.).  In the transaction, Kight planned to sell the Glen Arden property to F.B. for approximately $2 million and form two limited liability companies for F.B. to hold title to the Glen Arden property for F.B.'s benefit.  (Id.).  Kight did not inform F.B. of this transaction.  (Id.).

On or about January 25, 2006, Kight accessed approximately $2 million from various of F.B.'s accounts, for purchase of his property.  (Id. ¶ 4).  Kight used approximately $500,000 of it to pay off his mortgage on the Glen Arden property and retained the rest for use in his discretion.  (Id.).  A deed transferring the Glen Arden property from Kight to the limited liability companies was not recorded in public real-estate records.  (Id.).

In 2008, Kight dissolved the two limited liability companies created contemporaneously with the alleged sale of the Glen Arden property to F.B.  (Id.

2

¶ 5).  In late 2009, Kight contributed the Glen Arden property to a new limited liability company that Kight and his son, R.K., jointly owned (the "New LLC"). (Id. ¶ 6).  When the property was transferred to the New LLC, Kight falsely represented to R.K. that Kight's wife still held title to the Glen Arden property. (Id.).  Kight did not disclose to R.K. that he sold the property to F.B. in January 2006.  (Id.).  R.K. moved into the Glen Arden property as his residence.  (Id.).

In December 2010, Kight prepared a deed to transfer the Glen Arden property to a separate limited liability company that Kight owned and controlled (the "Fourth LLC").  (Id. ¶ 7).  Kight backdated the deed to July 28, 2005, a date six months before the January 2006, sale of the Glen Arden property to F.B.  (Id. ¶ 7).  By the backdated deed, the property was transferred to the Fourth LLC.  (Id.). The backdated deed effectuated a transfer of the Glen Arden property from Kight's wife, who was the actual record owner and who had been since 2005.  (Id.).

On or about March 21, 2011, Kight caused the backdated deed to be recorded in the public real-estate records.  (Id. ¶ 8).  Kight required a file-stamped copy of the backdated deed to be returned to him by the United States Mail.  (Id.).

2.    Count Two: Bank Fraud

The Superseding Indictment alleges in Count Two that Kight prepared and filed the backdated deed to conceal that (1) the Glen Arden property was sold to a

3

limited liability company owned by and held for the benefit of F.B. and her family and that (2) Kight obtained approximately $2 million from the proceeds of the property sale.  (Id. ¶ 11).  The Superseding Indictment also alleges that when Kight backdated the deed, he knew that it would be used by R.K. to obtain a mortgage on the Glen Arden property.  (Id. ¶ 12).

On or about November 22, 2011, R.K. told Kight that R.K. was getting a mortgage on the Glen Arden property.  (Id. ¶ 13).  Kight asked his secretary to provide R.K. with copies of the backdated deed.  (Id.).  Underwriters with SunTrust Mortgage, Inc. ("SunTrust Mortgage") questioned R.K.'s ownership of the Glen Arden property.  (Id. ¶ 14).  SunTrust Mortgage eventually approved R.K.'s loan based on the publicly recorded deeds, which included Kight's backdated deed.  (Id.).

On or about January 16, 2012, R.K. informed Kight that R.K's loan would close in a few days.  (Id. ¶ 15).  On January 18, 2012, Kight emailed R.K to tell him to proceed with the closing, knowing that the current ownership of the Glen Arden property was based on the backdated deed.  (Id.).  On or about January 18 and 23, 2012, R.K. obtained a mortgage for $400,000 from SunTrust Mortgage and SunTrust Bank.  (Id. ¶ 16).

B.     Procedural History

On May 18, 2016, the grand jury returned a Superseding Indictment [15] against Defendant Kight.  Kight was indicted on one count of mail fraud, in violation of 18 U.S.C. § 1341 (Count One), and one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2 (Count Two).[2]  (Id. ¶¶ 1-9 & 10-17).

Count One charges that:

Kight, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and material omissions, with intent to defraud, did knowingly cause to be delivered by mail and by any private or commercial interstate carrier according to the direction thereon, a publicly recorded deed to 400 Glen Arden Place, Atlanta, Georgia, that Kight backdated and caused to be backdated to reflect a transfer of such property on or about July 28, 2005.

All in violation of Title 18, United States Code, § 1341.

(Id. ¶ 9).

Count Two charges that:

Kight, knowingly executed and attempted to execute, and willfully caused the execution and attempted execution of, a scheme and artifice (i) to defraud a financial institution, and (ii) to obtain moneys, funds, and assets owned by and under the custody and control of a financial institution by means of materially false and fraudulent

---

[2]     The Superseding Indictment also includes a forfeiture provision as authorized under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.  (Id. ¶¶ 18-19).

pretenses, representations and promises, that is obtaining a $400,000 mortgage loan for R.K. on or about January 18, 2012, from SunTrust Mortgage, Inc. and SunTrust Bank, by means of the fraudulent deed to 400 Glen Arden Place that Kight caused to be prepared and publicly recorded.

All in violation of Title 18, United States Code, §§ 1344 and 2.

(Id. ¶ 17).

On June 29, 2016, Kight moved to dismiss the indictment under Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure for failing to state an offense.  ([35] at 4).

## II.  DISCUSSION

### A.  Legal Standard for Motion to Dismiss Indictment

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."  U.S. Const. Amend. VI; United States v. Stefan, 784 F.2d 1093 (11th Cir. 1986).  Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides: "The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  An indictment is legally sufficient if it: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any

subsequent prosecution for the same offense." United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009); see also United States v. Fern, 155 F.3d 1318 (11th Cir. 1998). The test is "whether [the indictment] conforms to minimal constitutional standards." United States v. Poirier, 645 F.2d 453, 456 (11th Cir. 2003).

An indictment that follows the language of the statute is insufficient if it fails to "apprise the defendant with reasonable certainty" of the charged offense. United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). If an indictment tracks the language of the criminal statute, it must include enough facts and circumstances to inform the defendant of the specific offense being charged. United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges." United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978).

Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure allows a defendant to file a motion alleging a defect in the indictment, including the failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." Sharpe, 438 F.3d at 1263. In assessing whether an indictment meets

minimal constitutional standards, its allegations are to be accepted as true and "viewed in the light most favorable to the government." Id.  Courts are to "give the indictment a common sense construction" and determine its validity based on "practical, not technical considerations." United States v. McGarity, 669 F.3d 1218, 1235 (11th Cir. 2012); United States v. Gold, 743 F.2d 800, 812 (11th Cir. 1984).  The Court is not permitted to review the sufficiency of the evidence that will be offered in support of an indictment's allegations, for "[t]here is no summary judgment procedure in criminal cases." United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992); United States v. Salman, 378 F.3d 1266, 1267-68 (11th Cir. 2004) (a district court may not dismiss an indictment prior to trial on the ground of insufficient evidence); Sharpe, 438 F.3d at 1263 (Courts "may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.").

      B.    Analysis

          1.    Mail Fraud

Kight argues that the indictment fails to state any federal offense because the enumerated facts allege state-law theft, which is beyond the scope of the

mail-fraud statute, as a matter of statutory interpretation.[3]  ([35] at 9).  According to Kight, the government "failed to meet its burden of properly alleging Defendant's intent to deceive the victim, as well as materiality [of the backdated deed]," because the alleged "theft" of F.B's money was completed in 2006.  (Id. at 11-12).  The misappropriation of the money in 2006 or any alleged scheme to defraud, Kight asserts, has already reached fruition before the mailing of the backdated deed, and thus, the statute of limitations has expired.  (Id. at 16 & 19).  Kight also asserts that his alleged attorney-client relationship with F.B. is insufficient to create a fiduciary duty for the mail-fraud charge.  (Id. at 13).  The government disputes Kight's characterization of the indictment and asserts that the indictment, on its face, sufficiently set forth the essential elements of mail fraud under 18 U.S.C. § 1341.  ([37]).

The Court is limited to reviewing the face of the indictment and the language used to charge the crimes.  See Sharpe, 438 F.3d at 1263.  The law in question here is the mail-fraud statute, which criminalizes a person's participation in a "scheme to defraud a person of money or property."  18 U.S.C. § 1341.  Mail fraud consists of the following elements: "(1) an intentional participation in a scheme to defraud a

---

[3]     Kight asserts that his Motion "is not raising a notice challenge, *i.e.*, one that argues the indictment does not track the language of the statute, or apprise him of the conduct at issue."  ([41] at 1).

person of money or property, and (2) the use of the mails in furtherance of the scheme." <u>Sharpe</u>, 438 F.3d at 1263 (11th Cir. 2006).

The crux of Kight's arguments hinges on a particular reading of the government's theory of the case: that Kight "misappropriated" *only* F.B.'s money, untethered from any alleged scheme to defraud or the use of the mails in furtherance of the scheme. (<u>See</u> [35]). Kight's myopic reading of the indictment is not persuasive. The indictment, on its face, specifically charges Kight[4] with participating in a "scheme and artifice to defraud, and to obtain money *and* property." (<u>See</u> [15] ¶ 9) (emphasis added). This scheme not only includes Kight's misappropriation of money from F.B.'s accounts but Kight's later acts to defraud F.B. of the Glen Arden property. The two are part and parcel of the same alleged scheme. The conduct also includes the effort between these two events to disguise the ownership of the property. Kight's attempt to deconstruct this conduct into acts independent of each another is unconvincing, and Kight fails to demonstrate that the alleged facts viewed collectively are inadequate to state the mail-fraud offense. The Court should not and does not speculate whether Kight's

---

[4]    As set forth in the indictment, Kight was in a unique position because he was F.B.'s personal attorney and also had the responsibility to manage and oversee F.B.'s trusts, investments, entities, and assets.

alleged backdating of the deed was used to perpetuate a fraud. That is an issue to be decided at trial.

The Court finds that Count One plainly alleges an offense under the mail-fraud statute by charging Kight with violation of the statute and reciting each of the elements of the alleged offense. The indictment also includes enough facts and circumstances to inform Kight of the offense charged. The language of the indictment is facially sufficient to state a mail-fraud charge. The Court denies Kight's motion to dismiss Count One for failing to state a federal offense.

      2.   <u>Bank Fraud</u>

The bank-fraud statute makes a crime to knowingly execute or attempt to execute a scheme or artifice:

> (1) to defraud a financial institution; or

> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . . .

18 U.S.C. § 1344. The indictment charges Kight under both subsections. A violation of § 1344(1) requires "(1) that the defendant intentionally participated in a scheme or artifice to defraud another of money or property; and (2) that the intended victim of the scheme or artifice was a federally-insured financial institution." <u>United States v. McCarrick</u>, 294 F.3d 1286, 1290 (11th Cir. 2002). A

violation of § 1344(2) requires "(1) that a scheme existed to obtain moneys, funds, or credit in the custody of a federally-insured bank by fraud; (2) that the defendant participated in the scheme by means of material false pretenses, representations or promises; and (3) that the defendant acted knowingly." Id.

Kight argues that the indictment fails to allege a crime under § 1344(1) because it fails "to allege that SunTrust suffered any actual loss" and that "the bank never *could have* suffered any loss." (See [35] at 27). "But the statute, while insisting upon 'a scheme to defraud,' demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss." Shaw v. United States, — U.S. —, 137 S. Ct. 462 (2016). It is "sufficient" that the bank be "deprived of its right" to use of the funds, "even if it ultimately did not suffer unreimbursed loss." Id. (quoting Carpenter v. United States, 484 U.S. 19, 26-27 (1987)) (internal quotation marks omitted). Here, the indictment alleges that Kight "caused the fraudulent deed to be prepared and filed [because] Kight knew that such fraudulent deed would be used to obtain a mortgage loan," ([15] ¶ 12), and SunTrust Mortgage indeed based its approval of the loan in part on the fraudulent deed, (id. ¶ 14). Kight "was informed that R.K. was in the process of getting a mortgage," (id. ¶ 13), and that Kight directed R.K. to proceed with closing knowing the alleged fraudulent deed was used, (id. ¶ 15). As a result of the alleged

scheme, the bank was defrauded into making the loan.  The Court finds that the indictment sufficiently describes facts and circumstances to support the alleged bank fraud.

Kight next argues that the indictment fails to allege a crime under § 1344(2) because, according to Kight, the backdated deed was in of itself a legal instrument. ([35] at 28).  While backdating a deed may have a legitimate purpose such as to memorialize a previous legal transaction as Kight asserts, backdating of a legal instrument may be done to perpetuate a fraud.  Count Two plainly alleges that Kight prepared the backdated deed in furtherance of a fraud: to conceal the previous sale of the property to F.B. from the bank and to obtain a mortgage on that property from a federally insured bank.  The Court finds that the language of the indictment is facially sufficient to allege an offense under 18 U.S.C. §§ 1344(1) and (2).  The Court denies Kight's motion to dismiss Count Two for failing to state a federal offense.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Kight's Motion to Dismiss the Indictment [35] is **DENIED**.

13

**SO ORDERED** this 9th day of January, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE