```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION

 3   UNITED STATES OF AMERICA        )
                                     )
 4              Plaintiff,           )    CRIMINAL ACTION FILE
                                     )    NO. 1:16-CR-99-WSD
 5   v.                              )
                                     )    ATLANTA, GEORGIA
 6   BENNETT L. KIGHT                )
                                     )
 7              Defendant.           )
     _____)

 8

 9        TRANSCRIPT OF AUDIO-RECORDED PROCEEDINGS
         BEFORE THE HONORABLE LINDA T. WALKER,
10            UNITED STATES MAGISTRATE JUDGE

11                     TELECONFERENCE
              Wednesday, May 17, 2017

12

13

14

15   APPEARANCES OF COUNSEL:

16   For the Plaintiff:        OFFICE OF THE U.S. ATTORNEY
                               (By:  Douglas W. Gilfillan)
17
     For the Defendant:        DENTONS US LLP
18                             (By:  Rachel M. Cannon)

19

20

21

22     Proceedings digitally audio-recorded, then transcribed by
            mechanical stenography and computer by
23            NICHOLAS A. MARRONE, RMR, CRR
                 1714 U. S. Courthouse
24            75 Ted Turner Drive, S.W.
                 Atlanta, GA  30303
25               (404) 215-1486
```

```
1                Wednesday Afternoon Session

2                       May 17, 2017

3                         4:47 p.m.

4                        -- -- --

5              P R O C E E D I N G S

6                        -- -- --

7         (In open court by teleconference:)

8         THE COURT:  Good afternoon.

9         MR. GILFILLAN:  Good afternoon, Judge.

10        MS. CANNON:  Hello, Judge.

11        THE COURT:  Hi there.  I'm sorry, I am also on

12   criminal duty, so between search warrants and a little bit of

13   everything else, I'm running around.  I wanted to just --

14   thank you all, again, for your patience with me.

15        Having looked back at everything, what the Court

16   is going to -- the Court has selected a doctor to perform the

17   mental competency, and I wanted to give you his name and some

18   instructions.

19        The name of the evaluator is Dr. Daniel Chisholm

20   Marson, M-a-r-s-o-n.  He is a Ph.D., J.D., in the Department

21   of Neurology at the University of Alabama at Birmingham.

22        Looking closely at the statute, the Court has a

23   couple of directives.

24        The funding source is still -- the Court was trying

25   to secure funding.  It may not be able to do so.  So,
```

1  Mr. Gilfillan, the government may have to pick it up.  There

2  is a number of legal opinions being batted about as to what

3  the Court can do.

4        We obviously can order or appoint Dr. Marson, but

5  the problem becomes of who pays for it.  So right now it may

6  be the government, Mr. Gilfillan.

7        And then with regard to your client, Ms. Cannon,

8  because he is in Alabama, the Court is going to -- and I'm

9  not sure how long or how many times Dr. Marson would need to

10 see your client, but obviously he won't have to pay for the

11 testing, but to the extent that he has to stay there, hotel,

12 lodging, food or whatever, he will have to be responsible for

13 that.

14        MS. CANNON:  Okay.

15        THE COURT:  Let's see.  There are some other

16 specifics that -- I'm sorry, I'm shifting gears from duty.

17 Let's see.

18        The Court does not want either party to talk to

19 Dr. Marson prior to the evaluation or to contact him.

20        And I can send you his CV.  I could send both of

21 you his CV, if you like.

22        MS. CANNON:  Yes, please.

23        THE COURT:  Okay.

24        MR. GILFILLAN:  Sure.  Thank you.

25        THE COURT:  And I can tell you a couple of things

1    about him.  I'm looking at it myself.

2            And like I say, I will let you know.  I have not

3    had contact with him either.

4            He has a Ph.D. in Clinical Psychology from

5    Northwestern University Medical School in Chicago.  He also

6    attended University of Chicago Law School in Chicago.  He

7    also did some work at the University of Edinburgh in

8    Scotland.  He has a B.A. in History from Carleton College.

9            And, again, he's a Professor of Neurology from 2014

10   to 2017.  Looks like he retired in April of this year over

11   the Department of Neurology, School of Medicine, University

12   of Alabama.

13           He has worked at the University of Alabama

14   Alzheimer's Disease Center.  He has been the Director

15   Emeritus of the -- I'm sorry, he's Director Emeritus now of

16   the University of Alabama Alzheimer's Disease Center, from

17   2015 to 2017 he was the co-director, and 2005 to 2015 he was

18   the director.

19           He has also been a principal -- director and

20   principal investigator of the Alzheimer's Disease Research

21   Center funded by the National Institute on Aging at the

22   University of Alabama-Birmingham.

23           And he's also on the graduate faculty there at the

24   University of Alabama.  And also he has been a staff

25   psychologist at the Birmingham Veterans Administration

1    Medical Center.  And it goes on and on and on from there.

2         He's been -- he's been the president of the

3    National Academy of Neuropsychology.  Okay?

4         And I will have my courtroom deputy send you the

5    CV.

6         Any questions?

7         MS. CANNON:  And, Judge, I'm sorry, his last name

8    is spelled M-a-r-s-o-n?

9         THE COURT:  Correct, and the middle name Chisholm,

10   C-h-i-s-h-o-l-m.

11        MR. GILFILLAN:  Your Honor, I have two questions,

12   if I may?

13        THE COURT:  Sure, sure.

14        MR. GILFILLAN:  One is I'm curious whether

15   Dr. Marson has done a competency exam for a criminal case

16   before?

17        THE COURT:  It's my understanding that he has.  I

18   will confirm it.

19        It's my understanding that he has, but I will

20   check, and I can have my courtroom deputy send -- I'm sorry,

21   actually he has a very lengthy CV.  Give me one second.

22        MR. GILFILLAN:  Judge, that's okay.  I'm not -- I

23   don't know that I would object one way or the other.  I was

24   just kind of curious.

25        THE COURT:  It is my understanding that he has.

1          MR. GILFILLAN:  Okay.  And then my second question

2  is with regard to the Court's directive that neither party is

3  to contact Dr. Marson prior to the evaluation, what is the

4  Court's thinking in terms of -- there is really two

5  issues.  One is mechanically how is the defendant going to

6  get an appointment with Dr. Marson, and, second, what is the

7  Court's preference on how Dr. Marson will get information

8  about the case?

9          THE COURT:  There is a question -- let me get back

10  to you on that.  I think that no contact really means just

11  not calling him and asking him questions, this, that and the

12  other.

13          But let me regroup and respond to that -- respond

14  to you with regard to that.  And it may be information is

15  provided from the Court, but I'm not sure.

16          MR. GILFILLAN:  Okay.

17          THE COURT:  Okay.

18          MS. CANNON:  Okay.  Because just so you know,

19  Judge, we do have quite a number of medical records.

20          THE COURT:  Right, okay.  And it may be, you know,

21  you still could send the records there and then he can let

22  you know, give you some dates.

23          But I will check to make sure; okay?

24          MS. CANNON:  Okay.

25          THE COURT:  So that was for the appointment.  And

1   for -- Mr. Gilfillan, for the appointment, and for -- what

2   was the other question?

3          MS. CANNON:  Information --

4          MR. GILFILLAN:  I'm sorry, the question simply --

5   I'm trying to follow here.  I was just curious about,

6   you know, in terms of the scope of the no contact rule.

7          I mean, for example, just, you know, with

8   Dr. Marks, I had provided her with the indictment, another

9   publicly-filed pleading, and then some case materials, like

10  interview memos and documents.  Just based on my experience,

11  that's usually what psychiatrists want.

12         THE COURT:  Right, I think that's fine.  I think

13  the no contact is meaning like having conversations with them

14  regarding the case.

15         MR. GILFILLAN:  Okay.  But -- okay.

16         THE COURT:  But I will --

17         MR. GILFILLAN:  If Your Honor would just

18  clarify.  I mean, I don't want to run afoul of the Court's --

19         THE COURT:  Right, and I will.  And I will give it

20  to you in writing.  I will have my courtroom deputy spell out

21  what you can do in contacting and how to contact him.  Is

22  that okay?

23         MR. GILFILLAN:  Yes, Your Honor.

24         MS. CANNON:  Sure.

25         THE COURT:  Okay, for both of you.

1      MR. GILFILLAN:  And then I was going to mention,

2  with the payment, just let me know.  I had no problems

3  getting Dr. Marks approved.  I would anticipate no problems

4  getting this doctor approved.  So it went super smoothly.

5      THE COURT:  Okay.  So the -- definitely with

6  regards to payment, because we -- I'm sorry, say again about

7  the payment, Mr. Gilfillan?

8      MR. GILFILLAN:  I mean, I found it very easy to get

9  Dr. Marks approved, and if it would make the Court's life

10  easier, I'm happy to try to get this doctor approved.

11      THE COURT:  Is that okay with you, Ms. Cannon?

12      MS. CANNON:  Sure, sure.

13      THE COURT:  Okay.  Because the Court was trying to

14  do it, and it's very convoluted, the different opinions out

15  there.  Something that seems easy really is not for the

16  Court.

17      So that's great.  If you can get his approval, that

18  would be wonderful.

19      So I do have his retainer agreement or whatever,

20  and I'm not sure who handles that.  I can send you that or

21  they can just -- I guess whoever handles that for Justice can

22  maybe contact him regarding payment arrangements.

23      MR. GILFILLAN:  Right.  Somebody from my office

24  will need to contact him to get his Social Security or EIN

25  and I think some other basic information.  And so I would

```
 1    want to make sure that's okay with the Court as well.
 2              THE COURT:  Can we go ahead and do that?  If that's
 3    okay with Ms. Cannon, can we go ahead and do that to make
 4    sure that there is no problem with the payment?
 5              MS. CANNON:  Sure, sure.
 6              THE COURT:  If you will let us know, so whomever
 7    from Justice needs to contact Dr. Marson regarding setting up
 8    payment, that would be a big help, and we can go ahead and
 9    get this moving.
10              And then what I will do in the interim, I will also
11    work on, you know, how the two of you are to contact him.
12    But you can go ahead, Mr. Gilfillan, and work on the payment
13    arrangement.
14              MR. GILFILLAN:  Judge, is it okay if I have
15    somebody from budget or somebody call over to Dr. Marson?
16              THE COURT:  Yes.
17              MR. GILFILLAN:  And will he know what this is
18    about?  Has he been contacted by the Court?
19              THE COURT:  Yes, I believe so.
20              MR. GILFILLAN:  Okay.  Because, I mean, my budget
21    people are not -- they are just -- you know how it goes, they
22    will call him up, and if they won't know and he won't know --
23              THE COURT:  By the time they call him, he will be
24    notified.  How about that?
25              MR. GILFILLAN:  Okay.  Okay, that's great.  Thank
```

1    you.

2            THE COURT:  Okay?  Any questions, Ms. Cannon or

3    Mr. Gilfillan?

4            MR. GILFILLAN:  No, Your Honor.

5            MS. CANNON:  Not at this time.

6            THE COURT:  Okay.  Great.  And I will get something

7    to you tomorrow.

8            MS. CANNON:  Okay.

9            THE COURT:  Thank you very much.  Have a good

10   evening.

11           MS. CANNON:  Thank you.

12               (Proceedings adjourn at 4:58 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                  C E R T I F I C A T E

 2

 3   UNITED STATES OF AMERICA      :
                                   :
 4   NORTHERN DISTRICT OF GEORGIA  :

 5

 6            I, Nicholas A. Marrone, RMR, CRR, Official Court

 7   Reporter of the United States District Court for the Northern

     District of Georgia, do hereby certify to the best of my

 8   ability that the foregoing 11 pages constitute a true

 9   transcript of audio-recorded proceedings had before the said

10   Court, held in the city of Atlanta, Georgia, in the matter

11   therein stated.

12            In testimony whereof, I hereunto set my hand on

13   this, the 22nd day of June, 2017.

14

15

16

17
                         /s/ Nicholas A. Marrone
18                       _____
                         NICHOLAS A. MARRONE, RMR, CRR
19                       Registered Merit Reporter
                         Certified Realtime Reporter
20                       Official Court Reporter
                         Northern District of Georgia
21

22

23

24

25
```