```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION

UNITED STATES OF AMERICA          )
                                  )
               Plaintiff,         )    CRIMINAL ACTION FILE
                                  )    NO. 1:16-CR-99-WSD
v.                                )
                                  )    ATLANTA, GEORGIA
BENNETT L. KIGHT                  )
                                  )
               Defendant.         )
_____  )


        TRANSCRIPT OF AUDIO-RECORDED PROCEEDINGS
         BEFORE THE HONORABLE LINDA T. WALKER,
              UNITED STATES MAGISTRATE JUDGE

                     TELECONFERENCE
                  Tuesday, June 13, 2017




APPEARANCES OF COUNSEL:

For the Plaintiff:          OFFICE OF THE U.S. ATTORNEY
                            (By:  Douglas W. Gilfillan)

For the Defendant:          DENTONS US LLP
                            (By:  Rachel M. Cannon)






  Proceedings digitally audio-recorded, then transcribed by
           mechanical stenography and computer by
              NICHOLAS A. MARRONE, RMR, CRR
                   1714 U. S. Courthouse
                  75 Ted Turner Drive, S.W.
                     Atlanta, GA  30303
                      (404) 215-1486
```

```
 1                    Tuesday Afternoon Session
 2                         June 13, 2017
 3                           3:53 p.m.
 4                            -- -- --
 5                      P R O C E E D I N G S
 6                            -- -- --
 7              (In open court by teleconference:)
 8         THE COURT:  Okay.  Good afternoon.
 9         MR. GILFILLAN:  Good afternoon, Judge.
10         MS. CANNON:  Good afternoon, Your Honor.
11         THE COURT:  It's my understanding -- this is the
12   case of U.S. v. Kight, 1:16-CR-99.
13         Okay.  It's my understanding we have on the line on
14   behalf of the defendant Rachel Cannon, on behalf of the
15   government Douglas Gilfillan.
16         We had a telephone conference on Friday, which was
17   June 9th, and that was as a result of a transmittal letter
18   that Ms. Cannon sent to Dr. Marson along with defendant
19   Kight's documents.
20         At that time the Court reinformed the parties of
21   the Court's previous instruction not to have any contact with
22   Dr. Marson unless and if it was through the Court.
23         I also instructed the parties in dealing with our
24   expert to -- any additional correspondence should say
25   enclosed please find Documents No. 1 through whatever.  Am
```

```
 1   I correct?
 2              MR. GILFILLAN:  Yes, Your Honor.
 3              MS. CANNON:  Yes, Your Honor.
 4              THE COURT:  Okay.  Ms. Cannon, you sent
 5   Dr. Solomon, who is Dr. Marson, a letter, transmittal letter,
 6   and included in that you had Marson 1 through Marson 8.  What
 7   is that?
 8              MS. CANNON:  We sent all of the same records we had
 9   sent to Dr. Marson.
10              THE COURT:  Okay.  But what is specifically Marson
11   1 through 8?
12              MS. CANNON:  I believe that's our expert disclosure
13   letter.
14              THE COURT:  Okay.  That's not the transmittal
15   letter that you sent to Dr. Marson?
16              MS. CANNON:  No.
17              THE COURT:  Okay.  The Court would like to get a
18   copy of that, please, if you can send that to the Court.
19              You also indicated in your transmittal letter that
20   Mr. Kight's next medical appointment is at Emory Memory
21   Clinic on June 20th where he will be examined by
22   Dr. Chadwick Hales.
23              MS. CANNON:  Correct.
24              THE COURT:  And I'm not sure why you felt the need
25   to let his assistant know that.  You did not inform
```

```
 1    Dr. Marson of this.  So I have some concerns about that.  I'm
 2    not sure what the purpose of that was.
 3              In any event, what we are going to do is
 4    I indicated on Friday I will be entering an order regarding
 5    communication in this case.  If I haven't been clear the last
 6    two times, I'm going to be clear this time.
 7              I am going to enter an order today:  No
 8    communication with Dr. Marson or Dr. Coleman until such time
 9    as the Court has -- if you have any communication, that
10    communication is to go through me before you communicate with
11    Dr. Marson -- I'm sorry -- and Dr. Solomon.
12              And in addition to that, I received a telephone
13    call from Dr. Marson, and what the Court is going to do in
14    that order is we -- not we -- Dr. Marson would like to have
15    an unimpeded evaluation of plaintiff.
16              And so unless this next appointment is medically
17    necessary, we are not going to have any further testing or
18    evaluation or forensic examination, anything of that nature,
19    until he has had an opportunity to complete his assessment of
20    Mr. Kight.  And if there is some reason that he needs to have
21    some other testing, it can occur after Dr. Marson completes
22    his evaluation.
23              And if you feel the need that there is some reason
24    you have to go forward with some additional testing of your
25    client, then you can file a motion with the Court, and then
```

1  we can have a hearing on that.
2             MS. CANNON:  So, Your Honor, just a couple of
3  things.
4             So you had directed us initially to send all of the
5  medical records to the doctor.  So we let Dr. Marson know in
6  our original transmittal letter the date of Mr. Kight's last
7  medical appointment, which we provided the records for, and
8  his next medical appointment, which, as we said in the
9  letter, we planned to provide the records for.  That was just
10 purely to let the doctor know, you know, as soon as we get
11 those records, we will provide them.
12            This is a medical appointment his treating
13 physicians have ordered him to undergo.  This is not
14 something that the attorneys have requested.  We have not
15 spoken to Dr. Chadwick Hales.  This is medically necessary
16 for Mr. Kight.
17            And it was my understanding I was following the
18 Court's original order by, you know, drafting the release,
19 which the Court had ordered, you know, letting the doctor
20 know there is a release included in the file, letting the
21 doctor know which doctors we have provided that release to,
22 and making all of the records available.
23            So that was communicated to Dr. Marson, and that's
24 all that we communicated to Dr. Solomon.
25            THE COURT:  That might have been the transmittal

1  letter that had additional information, and since the Court
2  did not have a copy of it -- and I directed him not to look
3  at the transmittal letter -- he would not have been aware of
4  that, nor would the Court have.
5         If that was in that initial transmittal letter
6  where you, according to Mr. Gilfillan -- I'm not sure if you
7  began your advocacy at that time in that transmittal letter,
8  but that was all the same letter, Ms. Cannon?
9         MS. CANNON:  That was in the original letter to
10 Dr. Marson, yes.
11        THE COURT:  That's the transmittal letter that had
12 additional things in it that the Court had him set aside that
13 we talked about on Friday?
14        MS. CANNON:  Yes, yes.  And so in the letter to
15 Dr. Solomon we simply said, you know, enclosed are all the
16 records basically that we sent to Dr. Marson; Mr. Kight's
17 next appointment is with Dr. Chadwick Hales on June 20th,
18 that's the medically-necessary appointment that his
19 neurologist has ordered him to undergo; and we said,
20 you know, we've enclosed a release for you to send, you know,
21 whatever doctors you feel are necessary, because that's what
22 the Court had ordered us to do.
23        THE COURT:  So let me make sure that I'm clear.
24 You are indicating to the Court that his doctor, is that
25 Mr. Hales -- Dr. Hales, has ordered him to undergo additional

```
1   cognitive testing on June 20th?
2           MS. CANNON:  So --
3           THE COURT:  I just want to make sure I am clear.
4           MS. CANNON:  Yes.  I'm not -- so the appointment is
5   with Dr. Hales, and Dr. Hales is going to undergo cognitive
6   testing.
7           THE COURT:  No, that's not my question.
8           MS. CANNON:  I can't remember --
9           THE COURT:  No, no.  My question is you said
10  that -- you indicated to the Court that his attorney -- his
11  treating physician ordered him to undergo additional testing;
12  is that correct?
13          MS. CANNON:  Yes.  It was -- I'm not sure if it was
14  Dr. Ashley --
15          THE COURT:  Who is that?
16          MS. CANNON:  It was either Dr. Ashley or Dr. Bragg.
17          THE COURT:  Okay.  I'm going to need you to provide
18  something to the Court to that effect.
19          MS. CANNON:  Sure.  I mean, you know, look, we are
20  happy to, you know, make this as convenient for everyone as
21  possible.  If the doctor is going to be evaluating Mr. Kight
22  shortly --
23          THE COURT:  Okay, listen -- listen, listen.
24  I don't need an explanation.
25          MS. CANNON:  Uh-huh.
```

```
1              THE COURT:  You have said to the Court that this
2    appointment that he has on June 20th, he's been ordered to be
3    examined and to undergo additional testing.  I'm going to
4    need you to provide that to the Court, that his treating
5    physician has ordered him to undergo additional testing, and
6    that testing includes cognitive testing and that is medically
7    necessary.
8              MS. CANNON:  Okay.  Would you like a letter from
9    his treating physician to that effect?
10             THE COURT:  Whatever you need to support that he
11   needs to have this done on the 20th.
12             MS. CANNON:  Sure.  So that's when he has the
13   appointment.
14             I mean, I guess what I'm trying to say is we could
15   ask the Kights to reschedule that appointment if Dr. Marson
16   will be evaluating Mr. Kight shortly.
17             THE COURT:  I can't -- I don't -- I can't dictate
18   when he's going to start.  He's still reviewing and
19   evaluating the documents.  So I don't dictate -- I know that
20   it's my understanding that he does not want any additional
21   cognitive testing.
22             If you are telling me that it's something medically
23   necessary that he needs done -- I guess we need to separate,
24   make sure that we are clear that he has a medically-necessary
25   appointment, one; and then, two, that he is required to
```

```
 1   undergo additional cognitive testing and that that is
 2   medically necessary as well.  Or is this all in one?
 3            MS. CANNON:  Okay.
 4            THE COURT:  So he has a medical appointment;
 5   correct?
 6            MS. CANNON:  Yes.
 7            THE COURT:  Okay.  And that his doctor has said
 8   that's medically necessary?
 9            MS. CANNON:  That's my understanding, yep.
10            THE COURT:  And that's the appointment on June
11   20th?
12            MS. CANNON: Yes.  But I -- like I said, I am happy
13   to call the Kights and tell them that the Court would prefer
14   that Mr. Kight move that appointment.
15            THE COURT:  Well --
16            MS. CANNON:  I'm sure if it's just a matter of --
17            THE COURT:  You said it's medically necessary.
18   That's different in the Court's view of something that is a
19   cognitive testing.  And it may be the same.
20            So if he has to have something medically necessary,
21   then I would like to know what that is.  And I don't want to
22   instruct him to move it -- because these are your words,
23   medically necessary.  I don't want to instruct him to move it
24   if it is medically necessary.
25            MS. CANNON:  Okay.
```

1           THE COURT: And then you indicated that he will
2   undergo additional cognitive testing. So the cognitive
3   testing is medically necessary as well?
4           Let's do this. Let me make it easier. No more
5   testing. And if he needs to have something medically
6   necessary, just provide that with support to the Court, okay,
7   and then we can have a hearing on that.
8           MS. CANNON: Okay. So I will tell the Kights --
9           THE COURT: So no testing -- let me make sure, no
10  testing, no forensic evaluation, nothing.
11          If there is a medical necessity -- he has an
12  appendectomy, something of that nature. I don't want to say
13  what's all medically necessary; that's just an example. He
14  has to undergo surgery. Of course, we are not going to say
15  have a hearing on that first.
16          If there is something that he has to have that you
17  have deemed medically necessary, then you need to provide a
18  motion to the Court and supporting documentation, preferably
19  something from his doctor saying this is medically
20  necessary.
21          And if he was just going in for cognitive testing,
22  if it wasn't medically necessary, then -- and if it is, then
23  let the Court know, and we will have some type of quick
24  hearing or something on it. Are we clear?
25          MS. CANNON: Yes. So I will have the Kights

1  reschedule the appointment with Dr. Hales until after
2  Dr. Marson's appointment.  Is that okay?
3          THE COURT:  Yes.  And if you feel that he has to
4  have something medically necessary that cannot wait until
5  Dr. Marson has his evaluation, then you need to return to the
6  Court and file a motion to that effect and attach whatever
7  documents to support your motion.
8          I want to be clear that we are not trying to deny
9  Dr. Marson any medical treatment that he needs *(sic)*.
10          So we are actually trying to move this evaluation
11  on, pursuant to the motion that you filed in December, and
12  Dr. Marson would like to be able to have a clear field and
13  have his evaluation unimpeded.
14          MS. CANNON:  Okay.  Your Honor, we are happy to
15  comply.
16          You know, this appointment with Dr. Hales was
17  scheduled some time ago, you know, but I will have them --
18  I will have them reschedule it.
19          THE COURT:  Okay.  And any further communication
20  with Dr. Marson, even the scheduling of his appointments,
21  will come through the Court.  So no communication with
22  Dr. Marson or Dr. Coleman.  Are we clear?
23          MS. CANNON:  Yes.
24          THE COURT:  Okay.  Anything else?
25          MR. GILFILLAN:  Nothing, Your Honor.

1         MS. CANNON:  Not from the defendant.
2         THE COURT:  Thank you.  Have a good evening.
3    Goodbye.
4         MR. GILFILLAN:  Thank you, Judge.
5         MS. CANNON:  Thanks.
6              (Proceedings adjourn at 4:07 p.m.)

C E R T I F I C A T E

UNITED STATES OF AMERICA        :
                                :
NORTHERN DISTRICT OF GEORGIA    :

      I, Nicholas A. Marrone, RMR, CRR, Official Court Reporter of the United States District Court for the Northern District of Georgia, do hereby certify to the best of my ability that the foregoing 13 pages constitute a true transcript of audio-recorded proceedings had before the said Court, held in the city of Atlanta, Georgia, in the matter therein stated.

      In testimony whereof, I hereunto set my hand on this, the 22nd day of June, 2017.

*/s/ Nicholas A. Marrone*
_____
NICHOLAS A. MARRONE, RMR, CRR
Registered Merit Reporter
Certified Realtime Reporter
Official Court Reporter
Northern District of Georgia