**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**UNITED STATES OF AMERICA,**

**v.**                                                        **1:16-cr-99-WSD**

**BENNETT KIGHT,**

                              **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Bennett Kight's ("Defendant")

Objections to the Magistrate Judge's June 14, 2017 Order [70] ("Objections").

## I.    BACKGROUND

Defendant is charged with one count of mail fraud, in violation of 18 U.S.C.

§ 1341 (Count One), and one count of bank fraud, in violation of 18 U.S.C. § 1344

and 2 (Count Two).  (Superseding Indictment [15]).

On February 23, 2017, Defendant filed his Motion to Stay Proceedings to

Determine Competency [59] (the "Motion").  The Court granted Defendant's

Motion, and appointed Dr. Daniel Marson as the Court's expert.  ([63], [65]).  The

Magistrate Judge and the parties engaged in several telephonic hearings during

which they discussed the expert evaluation process, including the procedure for

contacting Dr. Marson, and the information and records required to be provided to Dr. Marson. Some of these telephonic hearings were not recorded and were not transcribed.

On June 14, 2017, the Magistrate Judge issued her Order [65]. In it, she (1) ordered Defendant's counsel to submit copies of documents that they sent to Dr. Marson; (2) prohibited the parties from communicating with Dr. Marson or his staff without obtaining the Court's permission; and (3) required that all communications to Dr. Marson be provided first to the Court. (June 14th Order at 2-3). The June 14th Order states further:

1. Defendant Kight shall not undergo any additional cognitive testing, evaluations, or forensic examinations unless and until Dr. Marson has performed his evaluation and report;

2. To the extent that Defendant Kight maintains that additional cognitive testing, evaluations, and/or forensic examinations are medically necessary before the Court's expert has completed his or her evaluation, Defendant Kight is directed to file a motion with the Court and to attach supporting documentation. If a motion and supporting documents are filed, the Court will make every effort to either schedule a hearing and/or address the motion as soon as practical. If Defendant Kight's treating physician(s) determines that cognitive testing or evaluation is immediately medically necessary during an emergency or life-threatening situation, however, Defendant Kight's treating physician(s) should not delay any such emergency care. If such care is rendered, Defendant Kight shall notify the Court within one week that such care was administered and provide supporting documentation.

(Id. at 3).

On June 29, 2017, Defendant filed his Objections.  Defendant objects to:

(1) the Magistrate Judge's summary of events in the June 14th Order;[1]

(2) the failure to follow the "expert appointment protocol required by" Rule 706 of

the Federal Rules of Evidence; (3) the Magistrate Judge's *ex parte* communications

with Dr. Marson; (4) the requirement that the parties first submit to the Court all

communications to Dr. Marson; and (5) the requirement that Defendant seek Court

approval before undergoing medical evaluations.

## II.  LEGAL STANDARDS

### A.  Review of a Magistrate Judge's Order

Under Rule 59(a) of the Federal Rules of Criminal Procedure, a magistrate

judge may rule on any matter referred by a district judge that does not dispose of a

charge or defense.  If any party files objections to a magistrate judge's order on

nondispositive matters, "the district judge must consider timely objections and

modify or set aside any part of the order that is contrary to law or clearly

erroneous."  Fed. R. Crim. P. 59(a).  "For a factual finding to be 'clearly

erroneous,' the Court, after reviewing all of the evidence, must be left with a

definite and firm conviction that a mistake has been committed."

---

[1]	In connection with this objection, Defendant also argues that the Magistrate
Judge's failure to record all of the pretrial telephonic hearings, in which the expert
protocol was discussed, has prejudiced Defendant.

United States v. Foster, 155 F.3d 1329, 1331 (11th Cir. 1998). "Where the evidence has two possible interpretations, the . . . court's choice between them cannot be clearly erroneous." Id. "A ruling is contrary to law when the magistrate judge has misinterpreted or misapplied the applicable law." In re Grand Jury Empaneled April 24, 2008, 601 F. Supp. 2d 600, 603 (D.N.J.2008); see also Pigott v. Sanibel Dev., LLC, No. 07-0083-WS, 2008 WL 2937804, at *5 (S.D. Ala. July 23, 2008) ("An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.") (citing S.E.C. v. Cobalt Multifamily Investors I, Inc., 542 F. Supp. 2d 277, 279 (S.D.NY. 2008)).

B.     <u>Appointment of an Expert Under 18 U.S.C. §§ 4241, 4247, and Rule 706 of the Federal Rules of Evidence</u>

18 U.S.C. § 4241(a) provides that the Court shall order a hearing regarding a defendant's mental competency to stand trial "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The Court may "order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)." 18 U.S.C. § 4241(b).

A psychiatric or psychological examination "shall be conducted by a licensed or certified psychiatrist or psychologist" who "shall be designated by the court." 18 U.S.C. § 4247(b). Rule 706 of the Federal Rules of Evidence permits the Court to appoint an expert and requires that the Court inform the expert of his duties either in writing with a copy filed with the clerk, or orally at a conference in which the parties have an opportunity to participate. Fed. R. Evid. 706(a), (b).

After the examination, the court-appointed expert must submit a report. 18 U.S.C. § 4247(c); see also Fed. R. Evid. 706(b)(1) (expert must advise parties of any findings he makes). Section 4247(c) provides:

> A psychiatric or psychological report ordered pursuant to this chapter shall be prepared by the examiner designated to conduct the psychiatric or psychological examination, shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government, and shall include—
>
> (1) the person's history and present symptoms;
>
> (2) a description of the psychiatric, psychological, and medical tests that were employed and their results;
>
> (3) the examiner's findings; and
>
> (4) the examiner's opinions as to diagnosis, prognosis, and—
>
> (A) . . . whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4247(c).  The Government did not oppose Defendant's Motion to Stay

Proceedings to Determine Competency, and the parties do not oppose the

appointment of Dr. Marson.  Instead, Defendant objects to the manner in which

Dr. Marson was appointed and some of the procedures governing interaction

between the Court, the parties, and Dr. Marson.

## III.    DISCUSSION

### A.    Failure to Follow Rule 706 of the Federal Rules of Evidence

Defendant argues that the Magistrate Judge's appointment of Dr. Marson did

not comply with Rule 706 of the Federal Rules of Evidence because the Magistrate

Judge failed to inform Dr. Marson of his duties in a written statement or orally at a

conference in which the parties have an opportunity to participate.  (Objs. at

18-24).  Having reviewed the record, the Court concludes that the expert

appointment and evaluation procedure, including in the June 14th Order, is

required to be modified.  The Court's "Order Appointing Dr. Daniel Marson to

Conduct a Competency Evaluation Pursuant to 18 U.S.C. §§ 4241, 4247" [74]

("Order Appointing Dr. Marson") shall govern the appointment of Dr. Marson in

this case.

In view of the Court's Order Appointing Dr. Marson, Defendant's objection

"to the factual narrative contained within" the June 14th Order, and his request that

the Court strike the first three (3) paragraphs of the Magistrate Judge's June 14th Order, are denied as moot. The Court considers Defendant's remaining objections below.

B.    *Ex Parte* Communications

Defendant objects generally to the Magistrate Judge's *ex parte* communications with Dr. Marson.[2] "[N]ot every *ex parte* contact between a judge and court-appointed expert" is improper. United States v. Craven, 239 F.3d 91, 103 n.3 (1st Cir. 2001) (citing United States v. Green, 544 F.2d 138, 146 n.16 (3d Cir. 1976)). Defendant fails to identify the subject of any *ex parte* communication or how information allegedly discussed during the *ex parte* communication could affect the Court's evaluation of Defendant's competency. See Craven, 239 F.3d at 101 (holding that "a sentencing court may not utilize an *ex parte* conversation with a court-appointed expert as a means to acquire information critical to a sentencing determination and then relay on the information in fashioning the defendant's sentence"); Green, 544 F.2d at 146 (judge's *ex parte* communications with court-appointed expert did not violate defendant's due process rights because defense counsel was afforded an opportunity to

---

[2]    To the extent Defendant argues that these *ex parte* communications make it "unclear who is setting the examination protocol and what the examination protocol is" (Objs. at 28), the Court's Order Appointing Dr. Marson sets out, in writing, Dr. Marson's duties in this case.

cross-examine the expert and present countervailing evidence).[3]  Defendant's

objection to the Magistrate Judge's *ex parte* communications with Dr. Marson is

overruled.

C.        Restrictions on the Parties' Communications with Dr. Marson

Defendant next objects to the requirement that the parties submit all

communications to Dr. Marson first to the Court for review.  One of the primary

functions of a court-appointed expert is to provide the court with unbiased

information, unaffected by the position of the party retaining the expert.  See

United States v. Fratus, 530 F.2d 644, 649 (5th Cir. 1976) (expert appointed to

evaluate defendant's competency to stand trial "function[s] as an objective,

non-partisan expert"); United States v. Theriault, 440 F.2d 713, 715 (5th Cir. 1971)

(court is authorized to appoint its own witness, who is expected to be neutral and

detached; the "impartial expert appointed" "to inquire into defendant's sanity is not

---

[3]        Defendant provides no support, in law or fact, for his request to question
Dr. Marson, before his evaluation of Defendant, regarding his *ex parte*
communications "so that Defendant may decide whether to seek Dr. Marson's or
the Magistrate Judge's recusal."  (Objs. at 28-29).  The Court states further that it
participated in two conversations with Dr. Marson.  These conversations concerned
requests for information Dr. Marson needed for his evaluation, the schedule for his
work, compensation for his professional services and those assisting him, and that
as an expert appointed by the Court, the Court required him to conduct a fair and
objective evaluation of Defendant for the Court to consider in determining if
Defendant is competent to stand trial.

a prosecution witness");[4] <u>United States v. Green</u>, 544 F.2d 138, 146 (3d Cir. 1976)

("To aid the court in its determination [of a defendant's competency], the inherent

power of a trial judge to appoint an expert of his own choosing is clear. . . . [T]he

impartial expert is the court's witness, rather than a prosecution or defense

witness."); <u>cf.</u> <u>Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.</u>, 558 F.3d 1341,

1347 (Fed. Cir. 2009) (discussing a judge's "power to call an expert . . . to give

impartial testimony to aid him or the jury"). To accomplish this, the Court has the

authority to prohibit *ex parte* communications between a party and a

court-appointed expert, as well as the authority to direct that all communication

with the expert be done through the Court. <u>See</u> <u>Leesona Corp. v. Varta Batteries,</u>

<u>Inc.</u>, 522 F. Supp. 1304, 1312 n. 18 (S.D.N.Y. 1981) (parties not permitted to

communicate directly with court-appointed expert; all communications with expert

done through court, and copies of all materials sent by court to exert docketed and

placed in court file); <u>Crawford v. Greater Cleveland Reg. Transit Auth.</u>,

No. C86-2490, 1991 WL 328037, at *1 (N.D. Ohio July 26, 1991) (ordering that

expert "shall not make any *ex parte* communications with either parties'

---

[4]     <u>Theriault</u>, 440 F.2d 713, was decided under 18 U.S.C. § 4244, now
18 U.S.C. § 4247, and former Rule 28(a) of the Federal Rules of Criminal
Procedure, which permitted the court to appoint its own expert witness in a
criminal case. In 1972, Fed. R. Crim. P. 28(a) was stricken, "since the subject of
court-appointed expert witnesses is covered in Evidence Rule 706 in detail." <u>See</u>
Fed. R. Crim. P. 28, 1972 Advisory Committee Note.

counsel(s)"); G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.,

671 F. Supp. 2d 1203, 1215 (D. Nev. 2009) (defendants' *ex parte* meetings with

independent experts, and delivery of legal documents to experts without consulting

plaintiff, so compromised experts' role that court could not rely on experts'

analysis); Bd. of Mgrs. of Bay Club Condo. v. Bay Club of Long Beach Inc.,

827 N.Y.S.2d 855, 858 (N.Y. Sup. Ct. 2007) (improper *ex parte* communication

can occur when contact between a party and the expert inhibits the expert's ability

to "provide the court with . . . unbiased information").

      Defendant relies on Drope v. Missouri, 420 U.S. 162 (1975),

Medina v. California, 505 U.S. 437 (1992), and Watts v. Singeltary, 87 F.3d 1282

(11th Cir. 1996), to support that defense counsel are entitled to communicate their

views on Defendant's competency to his evaluating expert.  Defendant's reliance is

misguided.  In Drope, the Supreme Court held that information about the

defendant's suicide attempt during trial, coupled with psychiatric information

available before trial, created sufficient doubt of defendant's competence to stand

trial that further inquiry, including a psychiatric examination, was required.  In

recognizing that defense attorneys may make motions for psychiatric evaluations

for the purpose of delay, the Supreme Court stated, "[a]lthough we do not, of

course, suggest that courts must accept without question a lawyer's representations

concerning the competence of his client, an expressed doubt in that regard . . . is unquestionably a factor which should be considered" in determining whether to order a competency examination of a defendant.  Drope, 420 U.S. at 177 & n.13.  See also United States v. Flores-Velasquez, 651 F. App'x 861, 864 ("'[A] lawyer's representations concerning the competence of his client . . . is unquestionably a factor which should be considered' *in deciding whether a defendant's competence requires evaluation*, but a district court is not required to 'accept without question' such representations.") (quoting Drope, 420 U.S. at 177 n. 13) (emphasis added).

In Medina, the Supreme Court held that a state law that places the burden of proof on a defendant in a competency hearing was not unconstitutional.  The Supreme Court reasoned that the defendant's rights were adequately protected at the competency hearing including because the defendant is entitled to assistance of counsel and psychiatric evidence is introduced on the question of defendant's mental condition.  Medina, 505 U.S. at 450.  The Supreme Court stated, "[a]lthough an impaired defendant might be limited in his ability to assist counsel in demonstrating incompetence, the defendant's inability to assist counsel can, in and of itself, constitute probative evidence of incompetence, and defense counsel will often have the best-informed view of the defendant's ability to participate in his defense."  Id.

In Watts, the Eleventh Circuit held that a defendant failed to establish a bona fide doubt as to his competency during trial, including because his attorney did not suggest that he lacked capacity to understand the proceedings and assist in his defense. The Eleventh Circuit observed that, "[b]ecause legal competency is primarily a function of defendant's role in assisting counsel in conducting the defense, the defendant's attorney is in the best position to determine whether the defendant's competency is suspect." Watts, 87 F.3d at 1288. The Eleventh Circuit concluded that "failure of defense counsel to raise the competency issue at trial, while not dispositive, is evidence that the defendant's competency was not really in doubt and there was no need for a [competency] hearing." Id.

Drope, Medina and Watts focus on the relevance *to the trial court* of defense counsel's opinions regarding defendant's competency. These cases do not, as Defendant suggests, hold that "defense counsel are entitled (and indeed obligated) to communicate their views on Defendant's competency *to his evaluating expert*." (Objs. at 29) (emphasis added). A more careful review of the cases by Defendant would have disclosed they do not support Defendant's claimed right to communicate with the Court's expert, *ex parte* or otherwise. Counsel will be permitted to present their views on Defendant's competency—specifically, their interactions with Defendant as they relate to Defendant's ability to assist counsel in

his defense—to the Court at the competency hearing.[5]  Defendant's objection to

the procedure for communicating with Dr. Marson is overruled.

D.     Restrictions on Cognitive Evaluations

Defendant also objects to the prohibition on "any additional cognitive

testing, evaluations or forensic examinations unless and until Dr. Marson has

performed his evaluation and report," and the requirement that Defendant seek

Court approval before undergoing any "cognitive testing, evaluations, and/or

forensic examinations."  (Objs. at 30-31) (citing June 14th Order at 3).

Defendant claims that the June 14th Order prohibits, or imposes an overly

burdensome Court-approval process on, medically necessary treatment including

for Defendant's "many non-cognitive ailments."  The Court has revised the

June 14th Order to address Defendant's perceived restrictions on testing,

evaluations and forensic examinations to assure Defendant the restrictions are

intended to address only the specific medical condition or conditions that

---

[5]     The Court notes that "[t]he determination of a defendant's competency to stand trial must be that of the trial judge."  Green, 544 F.2d at 145.  "The court expert serves to enhance the trial court's understanding, but it is the court, and not its expert, that decides the case.  Thus, a court appointing a Rule 706 expert must be careful to remind counsel . . . that the case is not to be tried to the court expert." Leesona, 522 F. Supp. at 1312.  Although Defendant's ability to assist counsel in his defense may be relevant to the Court's determination of whether Defendant is competent to stand trial, it is not relevant to Dr. Marson's clinical evaluation of the medical conditions that Defendant contends affect his competency.

Defendant contends affects his competency to stand trial in this case.[6]  Defendant's

objection to perceived restrictions placed on additional medical evaluations is

denied as moot.[7]

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Bennett Kight's Objections to

the Magistrate Judge's June 14, 2017 Order [70] are **SUSTAINED IN PART** and

**OVERRULED IN PART**.  Defendant's objection to the failure to comply with

---

[6]     The Court's Order Appointing Dr. Marson provides:

Any cognitive testing, or forensic examination, related to the
competency issue in this case or the specific medical condition(s) that
Defendant contends affect his competency to stand trial in this case
shall be conducted, and all reports completed, on or before
August 6, 2017.  Any reports prepared shall be delivered to the Court
on or before August 7, 2017, so that they may be forwarded to
Dr. Marson for his review before the Report is completed.  If
Defendant contends that unforeseen circumstances arise after
August 7, 2017, which require further testing and evaluation,
Defendant shall advise the Court immediately.

Nothing in this Order shall be interpreted to preclude Defendant
from receiving treatment (1) during an emergency or life-threatening
situation; or (2) for any ordinary medical condition, including those to
treat the cognitive disorders he asserted in his Motion.  Defendant shall
promptly advise the Court of any such treatment so the Court can
evaluate of treat records should be provided to Dr. Marson.

(Order Appointing Dr. Marson at 4-5).  These requirements will ensure that there
are not differing evaluations that may preclude or impede Dr. Marson's evaluation.

[7]     If Defendant is unsure about whether testing, evaluations or analysis may be
conducted in view of this Order, he may request a telephone conference with the
author of this Order.

Rule 706 of the Federal Rules of Evidence is **SUSTAINED**. Defendant's

objection "to the factual narrative contained within" the June 14th Order; his

request that the Court strike portions of the June 14th Order; and his objection to

restrictions placed on additional medical evaluations, are **DENIED AS MOOT**.

Defendant's objections based on the Magistrate Judge's *ex parte* communications

with Dr. Marson and restrictions on the parties' communications with Dr. Marson,

are **OVERRULED**.

 **IT IS FURTHER ORDERED** that the Court's Order Appointing

Dr. Daniel Marson to Conduct a Competency Evaluation Pursuant to 18 U.S.C.

§§ 4241, 4247 [74] **SHALL** govern the appointment of Dr. Marson in this case.


 **SO ORDERED** this 12th day of July, 2017.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE