# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

BENNETT L. KIGHT,

        Defendant.

1:16-cr-99-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant Bennett L. Kight's ("Defendant" or "Kight") Motion to Reconsider the Court's October 16, 2017 Order [91] ("Motion to Reconsider").

## I. BACKGROUND[1]

On December 19, 2016, the Government moved to disqualify Barry J. Armstrong and his law firm, Dentons USA LLP (the "Firm" or "Defense Counsel") from representing Kight in this criminal action. The Government argued disqualification was warranted on the grounds that Armstrong previously represented Kight and William C. Lankford ("Lankford"), a cooperating witness

---

[1] The Court previously discussed the complex factual and procedural background of this action in its October 16, 2017 Order [87], under reconsideration here. The contents of that lengthy Opinion are incorporated herein by reference.

here, in a state court civil action (the "Civil Action") that was substantially related to the charges brought against Kight in this case. (Motion to Disqualify Defense Counsel [45] ("Motion to Disqualify")). On February 14, 2017, Defendant filed an Unopposed Request for Oral Argument on the Government's Motion to Disqualify Defense Counsel [55] ("Unopposed Motion for Oral Argument").

On October 16, 2017, the Court granted the Motion to Disqualify and denied the Unopposed Motion for Oral Argument [87] (the "October 16th Order"). As to the Motion to Disqualify, the Court held that "the subject matter of Armstrong's representation of Lankford in the Civil Action [was] substantially related to the subject matter of his representation of Kight," and therefore "an actual conflict of interest" existed as to Armstrong's representation of Kight in this case. ([87] at 32-33). The Court then rejected Kight's waiver of the actual conflict because of Lankford's continued refusal to waive the attorney-client privilege.[2] ([87] at 34). As to Defendant's Unopposed Motion for Oral Argument, the Court found that oral argument was not necessary because Defendant did not identify the issues he contended were raised for the first time in the Government's Reply, Defendant's

---

[2] The Court also rejected Defendant's argument that Lankford already waived the attorney-client privilege under the terms of an engagement letter because the waiver language contained in the letter did not apply in this context. ([87] at 34-36).

2

claimed "worsening mental health issues" were the subject of extensive briefing and communications with the Court after the filing of the motion, and the "complex facts and issues implicating federal, state, and constitutional law" were adequately and accurately addressed by the parties in their briefs and submissions. ([87] at n.1; see also [55] at 1-2).

On October 27, 2017, Defendant filed his Motion to Reconsider. In it, he raises three grounds for reconsideration, including: (1) the Court was required to hold a hearing prior to disqualifying Defense Counsel; (2) the evidence in the record makes clear that Lankford and Kight's interests are not materially adverse; and (3) given the significant prejudice that will inure to Defendant if Defense Counsel is disqualified, and the "speculative nature" of the potential adversity, the Court should have instead appointed separate counsel to cross-examine Lankford.

## II. DISCUSSION

A.  Legal Standard[3]

Motions for reconsideration, assuming they are even appropriate in criminal cases, "'should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in the law, or the need to correct clear error or prevent a manifest injustice.'" Brinson v. United States, No. 1:04-cr-0128-01-RWS, 2009 WL 2058168, at *1 (N.D. Ga. July 14, 2009) (quoting Deerskin Trading Post, Inc. v. United Parcel Serv. of Am. Inc., 972 F. Supp. 655, 674 (N.D. Ga. 1997)). "Given the narrow scope of motions for reconsideration, they may not be used in a variety of circumstances." Brinson, 2009 WL 2058168

---

[3]  "The Federal Rules of Criminal Procedure do not 'expressly authorize []'" a motion for reconsideration from a criminal order." United States v. Vives, 546 F. App'x 902, 905 (11th Cir. 2013) ("Because no statute or Federal Rule of Criminal Procedure authorizes the filing of a motion for reconsideration in a criminal case, we affirm the denial of [] the motion for reconsideration.") (quoting United States v. Vicaria, 963 F.2d 1412, 1413-14 (11th Cir. 1992)); see also United States v. Lepore, No. 1:15-cr-367-WSD, 2016 WL 5110505, at *1 (N.D. Ga. Sept. 20, 2016) ("Although no statute or rule expressly provides for the filing of a motion for reconsideration in criminal cases, federal courts necessarily have substantial discretion in ruling on [them].") (internal citation and quotation omitted).
  Where courts in this District, including this Court, have contemplated motions for reconsideration in criminal cases, they have generally employed those standards underlying civil motions for reconsideration. See, e.g., United States v. Torres, No. 1:06-cr-351-WSD, 2017 WL 1405322 (N.D. Ga. April 20, 2017); Lepore, 2016 WL 5110505, at * 1. The Court does so here, but notes that its denial of Defendant's Motion for Reconsideration is further supported by the fact that the motion is not authorized.

at *1. They may not offer new legal theories or evidence that could have been presented in a previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation. Id. They may not be used to "'present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind.'" Id. (quoting Bryan v. Murphy, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003). Finally, a motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." Brinson, 2009 WL 2058168, at *1 (quoting Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995) (aff'd 87 F.3d 1242 (11th Cir. 1996)).

    B.    Analysis

Defendant's Motion for Reconsideration reargues issues previously raised and decided by this Court, and fails to present any issues involving the misapplication of or failure to apply relevant statutes, case law, or rules of procedure. For the reasons discussed below, the Court denies Defendant's Motion for Reconsideration.

1.  Hearing Prior to Disqualification

Defendant first argues that the Court was required to afford Defendant a hearing prior to disqualifying it. ([91] at 6-9). Defendant makes this argument based on three grounds: (1) the Government needed to confirm, on the record, its intention to call Lankford as a witness at trial; (2) the Court needed to consider Defendant's competency, or lack thereof; and (3) the Court needed to secure, on the record, Defendant's waiver of any conflict. (Id.).

The Government argues, as to the first ground, that Defendant's argument is "not a specification of error by the Court, [but rather] Defendant's repackaging of the argument that Lankford is really a defense witness." ([92] at 2). The Government confirms its intention to call Lankford as a witness in its case-in-chief, and notes that "Defendant cites no relevant statutes, case law[,] or rules of procedure that the Court misapplied or failed to apply in disqualifying counsel based on the Government's representation regarding this matter in writing . . . as opposed to at a hearing in open court." (Id.).

The Court is not aware of any legal precedent or other relevant rule dictating a party's entitlement to a hearing for the purpose of having another party, in this case the Government, confirm on the record its intention to call a particular witness that may present an actual conflict resulting in counsel disqualification. The Court

believes it was sufficient that the Government previously made this representation to the Court in writing, as required by the Court. ([48] at 19, n.5). The Court was entitled to rely on this representation of an Officer of the Court.

The Government contends next that, as to Defendant's claim that it should have been afforded a hearing to determine Defendant's competency, "Defendant previously moved for a hearing to address the purported intersection between his incompetency claims and the Government's disqualification motion." The Court denied this motion. ([92] at 2-3; see also [87] at 1). The Government also notes that "Defendant's reconsideration motion appears to advocate for a competency hearing, which is the subject of other, extensive briefing, as opposed to a hearing on issues relevant to or raised by the Government's motion for disqualification." ([92] at 3). The Government concludes that Defendant fails to cite authority that the Court misapplied or failed to apply in disqualifying counsel while Defendant's competency issue is pending.

The Court agrees. It does not appear that Defendant argues that a hearing on the merits of disqualification was required. Instead, it appears Defendant wants to reargue whether Defendant's competency is related to Defense Counsel's disqualification. The Court, however, is unaware of any legal authority requiring a hearing to determine a party's competency prior to disqualifying that party's

counsel. The analyses are separate. The decision to disqualify counsel is not contingent on a party's competency. It simply cannot be that a party's competency dictates whether counsel can or cannot be disqualified, including because a party's competency is unrelated to whether an actual conflict exists. To the extent that Defense Counsel now argues that Kight was not competent to waive an existing actual conflict, this argument is not relevant because the disqualification reached by the Court was based on the determination that the charges in this prosecution are substantially related to matters for which counsel here represented a cooperating witness intended to be called at trial by the Government. That is, Defense Counsel here has an actual conflict with a witness who refuses to waive it. Finally, as the Government points out, the issue of Kight's competency has been the subject of extensive briefing and submissions. The Court was aware of this competency issue at the time it considered disqualification. Indeed, it retained a competency expert and determined it would address the competency issue separately.[4]

---

[4] Defendant's Reply in Support of His Motion to Reconsider the Court's October 16, 2017 Order [93] ("Reply") notes that Defendant was "official[y]" diagnosed with Alzheimer's on November 6, 2017. ([93] at 3). Email correspondence with the Court further indicated that this diagnosis was the result of Defendant's private physician administering a lumbar puncture test to which he tested positive. ([93.1] at 3). The Court notes that this evidence may be relevant to

As to Defendant's contention that it was entitled to a hearing in order to confirm on the record in open court Defendant's waiver of the actual conflict, the Government argues that the Court "considered Defendant's proffer [to] waive the conflict and correctly decided to reject that waiver because Defendant's waiver [did] not sufficiently address the issues created by counsel's prior representation of Lankford." ([92] at 4).

Defendant relies on <u>United States v. Garcia</u>, 517 F.2d 272 (5th Cir. 1975) for the proposition that Defendant was entitled to what is typically referred to as a <u>Garcia</u> hearing to make clear, on the record, that he waived any actual conflict. ([91] at 9). The purpose of a <u>Garcia</u> hearing is to ensure that a defendant's waiver is legally valid in the event that a court decides to accept the waiver and allow counsel possessing the conflict to continue to represent the defendant. 517 F.2d at 277 (noting that the court must "carefully evaluate the persistent efforts of the defendants to waive any imperfections in such representation which may be apparent to the court," and that the "trial court should actively participate in the waiver decision"). Here, the Court determined that, even with a valid waiver of the

---

Defendant's competency, and it will be addressed separately at Defendant's competency hearing. It is not, however, reason to negate the actual conflict that exists here.

actual conflict, disqualification was warranted. A hearing was thus unnecessary in this instance.[5] Moreover, it was Lankford who was entitled to assert the privilege because of his prior representation by Defense Counsel. He, through his lawyer, made it clear that he refused to waive his privilege. <u>Garcia</u>, in this regard, does not apply.

2. <u>Evidence of Material Adverse Interest</u>

Defendant next challenges the Court's finding made pursuant to Rule 1.9(a) of the Georgia Rules of Professional Conduct:[6]

> Armstrong is also subject to disqualification under Rule 1.9 of the
> Georgia Rules of Professional Conduct. . . . Kight argues that
> Lankford's interests are not "sufficiently adverse" to support
> disqualification because Kight expects him to give favorable
> testimony. The Government represents that Lankford will testify
> about what Kight told him at the time, and what Lankford later
> discovered, about the Glen Arden Property transaction. That Kight

---

[5]  The Court also notes the oddity of this argument. Defense Counsel previously argued that its disqualification was not warranted because any actual conflict was waived. Defense Counsel now attempts in its Motion to Reconsider to argue that the Court failed to properly secure waiver of the actual conflict because it needed to be done so on the record at a hearing.

[6]  Rule 1.9 of the Georgia Rules of Professional Conduct states, in relevant part:
> A lawyer who has formerly represented a client in a matter shall not
> thereafter represent another person in the same or a substantially
> related matter in which that person's interests are materially adverse
> to the interests of the former client unless the former client gives
> informed consent, confirmed in writing.

<u>See</u> Ga. R. Prof. Conduct 1.9(a).

> did not fully inform Lankford at the time he first mentioned his desire
> to pay off his CPIC I and CPIC II loans, supports an inference that
> Kight concealed from Lankford and the Bunzls the manner in which
> he planned to do it. Although Lankford might provide some
> testimony favorable to Kight, the Court concludes that Kight's
> interests are materially adverse to Lankford's interests, particularly in
> view of Lankford's consistent, unequivocal refusal to waive the
> attorney-client privilege or allow his former lawyers to use his
> confidential communications.

([87] at 32, n.18). Defendant argues that in a successive representation case, like this one, it is much more difficult to establish material adversity. ([91] at 11-12). Defendant also maintains that, "as a factual matter, Defendant has demonstrated that his and Lankford's interests are *aligned*," and Lankford's expected testimony would not be "harmful or inconsistent with Defendant's case." (Id. at 12). Defendant argues that the Court erred when it focused on only one inference to be drawn from Defendant's conduct, because "several others exist." (Id. at 13). Defendant concludes that it is the "jury's job to decide which is the more likely inference." (Id.).

The Government points out that Defendant does not challenge the Court's finding that an actual conflict existed, or that the Court misapplied the law underlying that determination, but instead focuses on a footnote providing an additional ground for disqualification. ([92] at 5-6). The Government further contends that the Court "did not find that the inference was the only permissible

one to be drawn from Defendant's conduct," rather it "correctly found that the ability to draw th[e] inference from Lankford's anticipated testimony makes Defendant and Lankford materially adverse in this case." (Id. at 7). The Government, focusing on the underlying law applied to determine whether an actual conflict existed, argues that the Court correctly applied that law in finding that Lankford and Defendant are sufficiently adverse. (Id. at 7-8).

First, Defendant does not provide any argument in his Motion to Reconsider challenging this Court's key ruling that an actual conflict existed.[7] For that reason alone, the Court denies the Motion to Reconsider. Second, that multiple inferences could be drawn from Defendant's conduct, and that the Court based its ruling on one, is not contrary to existing authority. The governing law provides that where a conflict "*could* cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate." (United States v. Campbell, 491 F.3d 1306, 1311 (11th Cir. 2007) (quoting United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994) (emphasis added)). The case law further states that "it is also true that disqualification is equally appropriate if

---

[7] Defendant, in his Reply, provides a blanket response to his failure to argue against this holding, stating that he "does not agree [with] the remainder of the Court's ruling[s]," "nor has he waived any future appellate challenges to the remainder of the Court's ruling." ([93] at 7).

12

the conflict *could* deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interest." Campbell, 491 at 1311; Ross, 33 F.3d at 1523.  The Court did not err in finding that Defendant's interests were materially adverse.

### 3. Separate Counsel for Cross-Examination of Lankford

Finally, Defendant argues that "[e]ngaging separate counsel for Lankford's cross-examination would alleviate the concerns raised by all parties, particularly in this case, where the basis for disqualification is unreliable." ([91] at 15).  The Government argues, in response, that "Defendant fails to address how [appointing separate counsel] would be workable given the full scope of the conflict presented here and Lankford's central role in the underlying facts." ([92] at 9).

The Court considered, at the time it rendered its decision disqualifying counsel, whether it would be possible to have separate counsel cross-examine Lankford, and, in its discretion, chose not to permit it.  There is no clear error or "manifest injustice" here.  In United States v. Campbell, No. 1:04-cr-424-RWS-ECS, 2005 WL 6436177, at *4 (N.D. Ga. March 9, 2005), the court rejected the defendant's proposal to "mitigate or alleviate any conflict" by having separate, independent counsel handle cross-examination.  The court held that "[w]hile some

courts have discussed alternatives involving substitute counsel such as this, or the application of other limiting measures to address the conflict over cross-examination, the [c]ourt could find no post-<u>Wheat</u> case in which a court actually implemented, or affirmed the implementation of, the procedure proposed here." <u>Id.</u>

Other courts in this Circuit have held similarly. For example, in <u>United States v. Miranda</u>, 936 F. Supp. 945, 952 (S.D. Fla. 1996), the court rejected defense counsel's "back-up counsel" where an actual conflict arose from counsel's representation of a government witness in a related matter. The court concluded that the proposal would not be appropriate under the circumstances since it would not alleviate "the concerns with the public's perception regarding the fairness of the proceedings and the integrity of the judicial process; and with the rights of [the witness previously represented." <u>Miranda</u>, 936 F. Supp. at 952; <u>see also</u> <u>United States v. Delorme</u>, No. 07-20534-cr, 2009 WL 33836, at *7 (S.D. Fla. Jan. 5, 2009).

The Court finds no error in its application of the law, nor does it find any new facts justifying why it should change its prior, considered decision not to permit independent counsel cross-examine Lankford.

4. <u>Effective Date of Disqualification</u>

Having declined to reconsider its October 16th Order disqualifying Kight's Defense Counsel from representing Defendant in the trial of this matter, the Court addresses how to implement its Order. As the Court has noted, a competency hearing will be conducted in this case. That hearing may now be scheduled. Because the competency hearing will not involve Mr. Lankford's testimony, Kight may be represented by Defense Counsel at the competency hearing. The parties are hereby directed to file, on or before December 15, 2017, a list of the witnesses they intend to call at the hearing. Each witness's testimony will be described in detail and an estimate of their direct examination provided. The Court does not need any other submission by the parties before the hearing. The hearing is scheduled to be conducted on January 18, 2018 at 9:30 a.m., Courtroom 1705, Richard B. Russell Building, 75 Ted Turner Drive, S.W., Atlanta, Georgia. Witnesses shall be sequestered at the hearing.[8]

---

[8] Kight's <u>Daubert</u> Motion, filed on September 26, 2017 as part of Defendant's Response and <u>Daubert</u> Challenge to Dr. Daniel Marson's September 6, 2017 Report [81], will not be considered before the hearing. Kight may at the hearing question Dr. Marson and other witnesses regarding Dr. Marson's qualifications to offer his opinions. The Court will consider Dr. Marson's qualifications when considering Defendant's competency.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Bennett L. Kight's Motion to Reconsider the Court's October 16, 2017, Order [91] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Bennett L. Kight's competency hearing is scheduled to be conducted on January 18, 2018, at 9:30 a.m., Courtroom 1705, Richard B. Russell Building, 75 Ted Turner Drive, S.W., Atlanta, Georgia. The parties are hereby directed to file, on or before December 15, 2017, a list of the witnesses they intend to call at the hearing. No other submissions shall be filed prior to the hearing. Witnesses shall be sequestered at the hearing.

**SO ORDERED** this 27th day of November, 2017.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE