# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> BENNETT L. KIGHT, <br>                Defendant. | 1:16-cr-99-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant Bennett L. Kight's ("Defendant") Motion to File Under Seal [56] ("February 14, 2017, Motion to Seal"), Unopposed Motion to File Medical Records Under Seal [72] ("June 29, 2017, Motion to Seal"), Motion to File Exhibit A Under Seal [109] ("January 16, 2018, Motion to Seal"), and Motion to Seal Certain Competency Hearing Exhibits [115] ("January 29, 2018, Motion to Seal") (collectively, the "Pending Motions to Seal").

## I. BACKGROUND

Over the course of these criminal proceedings, Defendant has filed numerous motions to seal certain medical records and associated documents. Two of those motions were granted while Magistrate Judge Linda T. Walker was

overseeing the pre-trial proceedings of this case. The first, filed on January 23, 2017, was Defendant's Agreed Motion to File Under Seal [49] ("January 23, 2017, Consent Motion to Seal") seeking to seal the medical records of Dr. Angela Ashley's August 13, 2016, and November 15, 2016, evaluations of Defendant at Grady Neurology Clinic. In it, Defendant explained that Dr. Ashley's evaluations discussed Defendant's "confidential and highly sensitive medical and mental health history." ([49.1]. at 2). Defendant stated: "The privacy and confidentiality concerns of Defendant outweigh the public's interest in accessing this sensitive information." (Id.). On January 25, 2017, Magistrate Judge Linda T. Walker granted the January 23, 2017, Consent Motion to Seal. ([51]).

The second, filed on February 24, 2017, was Defendant's Unopposed Motion to File Under Seal [60] ("February 24, 2017, Motion to Seal") seeking to seal additional, voluminous "medical records (and summaries of those records) documenting Defendant's first and second hematomas, mental health evaluations, dementia, and aphasia[,]" including Dr. Jason King's June 2016 neuropsychological evaluation report. ([60] at 2). Upon further review, the Court discovered that the sealed exhibits include hundreds of pages of non-medical transactional documents and email correspondence regarding the Glen Arden Property. ([60.3] at 86-226). Defendant cited "confidential and sensitive medical

and mental health history and medications" as the grounds for sealing. (Id.). On February 27, 2017, Magistrate Judge Walker granted the February 24, 2017, Motion to Seal. ([61]).

There are four motions to seal pending before the Court—two to which the Government has not filed a response. The first, filed on June 29, 2017, is Defendant's Unopposed Motion to File Medical Records Under Seal [72] ("June 29, 2017, Motion to Seal"). Defendant seeks to seal certain "medical records documenting Defendant's hematomas, dementia, aphasia, medications, and other medical and mental health issues." ([72] at 1). The second, filed on January 16, 2018, is Defendant's Motion to File Exhibit A Under Seal [109] ("January 16, 2018, Motion to Seal"). Defendant seeks to seal "medical and neuropsychological information documenting Defendant's Alzheimer's Disease, dementia, medications, and other medical and mental health conditions," including a December 12, 2017, evaluation report from Dr. King. ([109] at 1).

The pending motions to which the Government objects include the February 14, 2017, Motion to Seal and the January 29, 2018, Motion to Seal. Defendant's February 14, 2017, Motion to Seal seeks to seal (1) medical records documenting a December 22, 2016, falling incident resulting in an acute left-sided subdural hematoma and (2) a generic "Work/School/Sports Excuse" form from

3

Grady Hospital Emergency Department dated February 6, 2017, explaining that Defendant was seen and treated in the emergency department on February 6, 2017, and that "[h]e is unable to return to work/school/sports until a minimum of 24 hours." ([57]; [57.1]). On February 21, 2017, the Government filed its Response in Opposition to Motion to Seal [58] ("Response to February 14, 2017, Motion to Seal"). The Government first argues that Defendant should not be able to seal this medical information because he disclosed it on the public record in his January 23, 2017, Response in Opposition to the Government's Motion to Disqualify Defense Counsel [48] ("Response to the Government's Motion to Disqualify"), and, given his public claims, sealing is not necessary to protect Defendant's privacy interests. ([58] at 3). The Government states:

> Defendant claims on the public record that he fell in December 2016, suffering a hematoma and broken ribs, and that he had a seizure on February 6, 2017, for which he went to the emergency room. Defendant also publicly claims that his 'dementia' has 'now progressed' into 'aphasia,' and that his 'altered mental state' and 'delirium' preclude him from assisting his counsel.

(Id. at 3). Referring to the January 23, 2017, Consent Motion to Seal, the Government also explains that, "[b]ecause health records often warrant sealing, the Government previously agreed with Defendant to seal a medical record in this case." (Id. at 9). The Government argues, however, that Defendant "went on to make public claims about his mental condition based on that seal record." (Id.).

4

The Government asserts that, "[n]ow that [it] has seen the records at issue and how Defendant uses them, . . . the Government opposes sealing these records." (Id. at 9-10).

Defendant's January 29, 2018, Motion to Seal seeks to seal a number of exhibits that were admitted and discussed at Defendant's competency hearing held on January 18-19, 2018. ([115]). According to Defendant, the exhibits contain "medical and neuropsychological information documenting Defendant's Alzheimer's Disease, dementia, medications, and other medical and mental health conditions." ([115.1] at 1). Defendant contends that the records discuss confidential and sensitive medical and mental health history and medications. (Id. at 2). At least some of the records include sealed filings from Fulton County Probate Court guardianship/conservatorship proceedings. Defendant further argues that the "public release of these documents would harm Defendant's privacy interests, particularly in this case where the Government is coordinating its criminal case with the Plaintiffs in the various civil suits pending between the Bunzl family and Defendant." (Id.).

On February 9, 2018, the Government filed its Response to Defendant's Motion to Seal Certain Competency Hearing Exhibits [119] ("Response to the January 29, 2018, Motion to Seal"). The Government states that it does not oppose

Defendant's request to seal "(a) voluminous medical records submitted on a CD and records of hospital visits for discrete health issues in February and March 2017; and (b) two Government exhibits that contain cognitive testing materials and stimuli that do not appear to be publicly available on the internet." ([119] at 1). The Government argues, however, that the remaining medical records and expert reports should not be sealed because it is "necessary for the public to evaluate, understand, and have confidence in the Court's finding that Defendant is competent." (Id. at 4). The Government contends that, "[i]n light of the claims and arguments that [Defendant] has made, Defendant no longer has a legitimate privacy interest in the remaining medical records and expert reports." ([119] at 5).

## II. DISCUSSION

### A. Legal Standard

"The press and public enjoy a qualified First Amendment right of access to criminal trial proceedings." United States v. Ochoa-Vasquez, 428 F.3d 1015, 1028 (11th Cir. 2005) (citing Globe Newspaper Co. v. Superior Court for the County of Norfolk, 457 U.S. 596, 603 (1982)). A "presumption of openness" governs, and may only be rebutted by the moving party if they "show 'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Ochoa-Vasquez, 428 F.3d at 1030 (quoting

Press-Enterprise Co. v. Superior Ct. of Cal., Riverside County, 464 U.S. 501, 510 (1984)). "When sealing proceedings or documents, a court must articulate the overriding interest 'along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" Id. (quoting Press-Enterprise, 464 U.S. at 510).

In deciding whether to shield information from the public, courts "consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." Romero v. Drummond Co., 480 F.3d 1234, 1246 (11th Cir. 2007).

B.  Analysis

The state of the sealed documents in this case, and, in particular, the Government's position regarding the sealing of particular medical records of Defendant has changed. Early in this matter, and before a competency hearing was requested, the parties agreed to seal various documents about Defendant's health. The Government now argues that documents that were discussed or otherwise relied upon in motions presented to the Court, or disclosed and discussed at the

Defendant's competency hearing, should not be sealed and those that were should be unsealed because they largely have already been disclosed and subject to public scrutiny. For example, Dr. Jason King's neuropsychological report, which was sealed on February 27, 2017, as part of Defendant's February 24, 2017, Motion to Seal, was a significant subject and significant testimony centered on it at the competency hearing. The Government argues it thus should now be unsealed. (See [60.3] at 11-32; [61]; [112.2]). Other exhibits include Dr. Angela Ashley's 2016 medical records diagnosing Defendant with vascular dementia and Dr. Jason King's report of Defendant's December 12, 2017, competency evaluation. (See, e.g., [49]; [50]; [109.3]; [112.4] at 268-69; [119] at 6).

Defendant has focused this action on his medical history and his mental capacity, and these issues have been a matter of public record for more than a year now. On January 23, 2017, in his Response to the Government's Motion to Disqualify, Defendant discussed, and inserted into the public sphere for the first time, information about a 2008 hematoma and subsequent dementia. ([48] at 13, 23, 32). On September 26, 2017, in his Response and Daubert Challenge to Dr. Marson's September 6, 2017, Report [81] ("Defendant's Daubert Challenge"), Defendant discussed at length, and even quoted from, multiple medical records relating to his 2008 hematoma, his June 2016 neuropsychological evaluation by

8

Dr. King, his November 2016 dementia diagnosis by Dr. Ashley, his December 2016 hematoma resulting from a fall while walking his dog, and his February 2017 seizure and aphasia diagnoses. (See generally [81]). On October 27, 2017, in his Motion to Reconsider the Court's October 16, 2017, Order [91] ("Motion for Reconsideration"), Defendant again raised the issue of his dementia and "potential Alzheimer's." ([91] at 4).

On January 18-19, 2018, the Court held a competency hearing, and on February 2, 2018, the Court issued an opinion deeming Defendant competent to stand trial. The competency hearing—a public proceeding—involved lengthy testimony regarding Defendant's medical history and mental capacity, and the Court's order ruling on Defendant's competency relied upon medical records and associated documents dating back to January 2008, most of which were introduced or discussed at the competency hearing. Defendant's competency remains an ongoing issue before the Court. On February 16, 2018, Defendant filed his Motion for New Competency Hearing and Other Relief [122] and his Renewed Daubert Challenge [123].

The Court finds that Defendant has failed to rebut the "presumption of openness" governing this Court's ruling because he has not shown that he has an "overriding interest" in sealing his medical records and associated documents "that

9

[] is essential to preserve higher values and is narrowly tailored to serve that interest.'" Ochoa-Vasquez, 428 F.3d at1030 (quoting Press- Enterprise Co. v. Superior Ct. of Cal., Riverside County, 464 U.S. 501, 510 (1984)). While the Court recognizes that Defendant's medical records and associated documents contain personal information in which Defendant would, under other circumstances, generally have a legitimate privacy interest, Defendant has injected into these proceedings the issue of his mental capacity and medical history to argue not only that he is not competent to stand trial but that his counsel should not have been disqualified, and that, to some extent, his supposed cognitive decline contributed to his alleged illegal conduct. The inter-relation of Defendant's alleged cognitive decline and the charges alleged is illustrated in Defendant's Motion for Reconsideration in which Defendant suggests that his "hematoma and other cognitive issues" caused him to "simply forg[e]t about the Glen Arden transaction." ([91] at 13).

Considering that Defendant has made his alleged cognitive decline and dementia a current central issue in this case by putting his competency to stand trial at issue and that the Court considered that information in great detail in issuing its February 2, 2018, Order [118], the public has an interest in this information—especially how it underpins this Court's competency determination.

The Court finds further that by putting at the forefront of these proceedings the issue of his competency, Defendant gave up, to a large degree, any legitimate privacy interests in his medical records and associated documents that he may have once had. Romero, 480 at 1246. Defendant's medical history, diagnoses, and treatment were largely disclosed by Defendant at the competency hearing. The Court also finds that allowing access to these documents would not impair court functions nor would it cause injury to Defendant if these documents were now further made public. Id. Finally, the Defendant's Motions to Seal contain general assertions about privacy interests, which are overbroad and certainly not narrowly tailored. Upon review, the Court discovered many documents that are not confidential and do not warrant sealing.[1] For example, the exhibits include

---

[1] Included in the exhibits are records from Fulton County Probate Court regarding Defendant's guardianship/conservatorship proceedings. The Court finds that, although there is some personal financial information contained in the records, the records assist in understanding the Court's competency determination and, in general, reflect information already available to the public. The Court therefore does not believe it is necessary to seal these documents.

Also included in the exhibits are psychology test materials and stimuli that the Government represents "do not appear to be otherwise or readily publicly available." ([119] at 6). The Government contends that the National Academy of Neuropsychology ("NAN") prohibits the dissemination of these documents. Specifically, an October 1999 NAN statement provides: Maintaining test security is critical, because of the harm that can result from public dissemination of novel test procedures. . . . [A] likely and foreseeable consequence of test release is widespread circulation, leading to the opportunity to determine answers in advance, and the manipulation of test performance." ([119.1] at 1, 2). While the

publicly available articles to which Dr. Marson contributed and the curricula vitae of some the experts and treating physicians.  (See, e.g., [112.6] at 1-22, 88-101).

Balancing Defendant's privacy interests against the "presumption of openness" that governs the Court's decision, the Court denies Defendant's Motions to Seal.  The Court finds further that those exhibits sealed earlier in this case, as the result of Magistrate Judge Linda T. Walker's orders, should now be unsealed.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Bennett L. Kight's Motion to File Under Seal [56], Unopposed Motion to File Medical Records Under Seal [72], Motion to File Exhibit A Under Seal [109], and Motion to Seal Certain Competency Hearing Exhibits [115] are **DENIED**.

**IT IS FURTHER ORDERED** that Judge Linda T. Walker's January 25, 2017, Order [51] and February 27, 2017 [61] Order shall be **VACATED** on March 10, 2018.  The Clerk is directed, at that date, to unseal the exhibits previously sealed as the result of these orders.

---

Court takes seriously the NAN guidance provided to it by the Government, it finds that it should not be sealed.  The Government could not represent definitively that these materials are not available on the Internet.  ([119] at 9-10).  The Court also is not convinced that allowing this material to remain public would lead to widespread dissemination.  The Court therefore denies the request to seal this material.

**SO ORDERED** this 2nd day of March, 2018.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE