IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

BENNETT L. KIGHT,

    Defendant.

CASE NO. 1:16-cr-00099-AT-LTW

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

This case is currently before the Court on Defendant Bennett L. Kight's Motion for Production of Grand Jury Transcripts (Doc. 34); Motion in Limine to Exclude the Opinions and Testimony of Robert Danforth (Doc 164); Motion to Dismiss Counts One and Two of His Superseding Indictment (Doc. 177); Motion to Dismiss Second Superseding Indictment (Doc. 196); and Renewed Motion in Limine to Exclude the Opinions and Testimony of Robert Danforth (Doc. 205). After careful consideration, the Court **RECOMMENDS** that Defendants' motions be **DENIED** (Docs. 34, 164, 177, 196, 205).

---

[1] Because the Court has an *Ex Parte* Motion in Limine under advisement, the undersigned has not yet certified this case ready for trial.

## I.   **BACKGROUND**

A grand jury returned an Indictment against Defendant Bennett L. Kight ("Defendant") on March 16, 2016, charging Defendant with one count of mail fraud. (Doc. 1).  A Superseding Indictment on May 18, 2016, added a charge of bank fraud. (Doc. 15).   A Second Superseding Indictment, dated May 7, 2019, is the current charging instrument.  (Doc. 184).  Defendant is charged with one count of mail fraud, in violation of 18 U.S.C. § 1341 (Count One), and one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2 (Count Two).  (Id.).

The Second Superseding Indictment contains the following allegations.[2] As a lawyer, Defendant represented F.B. and members of F.B.'s family, and Defendant managed various trusts, assets, and investments for their benefit, including two trusts held for the benefit of F.B.'s children (the "Trusts").  (Doc. 1, ¶¶ 1, 2).  Defendant is accused of misappropriating approximately $2 million in January 2006 through a real estate transaction wherein he purportedly sold his former home (the "Property") to the Trusts (the "January 2006 transaction").  (Id. ¶ 3).  After obtaining $2 million from accounts owned or held for the benefit of the Trusts, Defendant used approximately $500,000 to pay off his mortgage.  (Id. ¶ 4).  Defendant created two limited liability

---

[2] Allegations in an indictment are treated as true when reviewing a 12(b) motion to dismiss.  See United States v. Sharpe, 438 F.3d 1257, 1258-59 (11th Cir. 2006).

companies to hold title for the benefit of the Trusts, but neither LLC received record title, and they were dissolved in 2008.  (Id. ¶¶ 2-4).

In late 2009, Defendant contributed the Property to an LLC owned by him and his son, R.K.  (Id. ¶ 6).  Defendant represented to R.K. that his wife still held title to the Property and did not disclose to R.K. that he sold the Property to the Trusts back in 2006.  (Id.).  R.K. ultimately moved into the Property.  (Id.).  In December 2010, Defendant caused a deed to be prepared that misrepresented that the Property was transferred on July 28, 2005, from Defendant's wife, the record owner, to an LLC controlled by Defendant (the "Deed").  (Id.).  The LLC receiving title was not involved in the purported sale of the Property to the Trusts in January 2006.  (Id. ¶ 7).  On March 21, 2011, Defendant caused the fraudulent deed to be publicly recorded with a file-stamped copy returned to him by U.S. mail.  (Id. ¶ 8).

Defendant caused the Deed to be prepared and filed to conceal the 2006 transaction.  (Id. ¶ 11).  Defendant knew that the fraudulent deed would be used to obtain a mortgage loan for R.K., and Defendant directed his secretary to provide copies of the fraudulent deed while R.K. was in the process of getting a mortgage.  (Id. ¶¶ 12-13).  SunTrust Mortgage, Inc. approved R.K.'s mortgage loan based on publicly recorded deeds, including the fraudulent deed.  (Id. ¶ 14).  Around January 16, 2012, R.K. notified Defendant that his loan would close in a few days, and Defendant told

him to go ahead with the closing.  (Id. ¶ 15).  Around January 18 and 23, 2012, R.K. obtained a mortgage loan from SunTrust Mortgage, Inc. and SunTrust Bank for $400,000.  (Id. ¶ 16).

## II.   MOTION FOR PRODUCTION OF GRAND JURY TRANSCRIPTS

Defendant requests the production of grand jury transcripts "to see how the factual and legal errors contained within the indictment arrived there," which Defendant argues is necessary to demonstrate that he was prejudiced by the errors. (Doc. 34, at 1).  According to Defendant, the grand jury could only have returned the indictment if the Government presented erroneous facts and law to the grand jury.  (Id.). Defendant's first contention is that the indictment incorrectly accuses Defendant of misappropriating funds owned or held for the benefit of F.B. when the funds for the January 2006 transaction came from trusts created for the benefit of F.B.'s husband's lineal descendants.  (Id. at 3-6).  The Second Superseding Indictment renders this argument moot by clarifying that the $2 million was obtained from Trusts held for the benefit of F.B.'s children and their lineal descendants.  (Doc. 184 ¶¶ 2, 3).

Defendant's next argument is that the indictment inaccurately describes the January 2006 transaction as Defendant selling the Property to F.B.  (Doc. 34, at 6-8). Citing an attached document titled "Purchase Agreement," Defendant avers that the January 2006 transaction involved one LLC selling another LLC its member interest

in a third LLC that owned the Property.  (Id.).  Defendant contends that information about the LLCs' contract was not presented to the grand jury, depriving the grand jury of accurate information.  (Id. at 8).  Further, Defendant states the facts do not support criminal fraud, and argues there is no evidence he did not intend to honor his obligations at the time of the January 2006 transaction.  (Id. at 9).  According to Defendant, he is entitled to the following information: (1) what facts the Government presented to the grand jury about the January 2006 transaction, and (2) when the Government believes Defendant intended not to perform the contract, and what the Government instructed the grand jury to that effect.  (Id. at 10).  Finally, Defendant argues the Government could not have instructed the grand jury on the applicable law on mail and bank fraud because the indictment fails to charge the crimes.  (Id. at 10-12).  Defendant seeks to view the legal instructions provided to the grand jury to evaluate whether they are accurate.  (Id. at 12-13).

Disclosure of matters occurring before the grand jury is generally prohibited. Fed. R. Crim. P. 6(e); Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 218-19 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").  The interest in grand jury secrecy is not absolute, and a party seeking disclosure of grand jury transcripts must demonstrate that the need for disclosure outweighs the need for and

public interest in grand jury secrecy.  United States v. Aisenberg, 358 F.3d 1327, 1348

(11th Cir. 2004).  To pierce the secrecy of grand jury proceedings, a defendant must

show "a compelling and particularized need" for disclosure.  Id. at 1349.  The district

court exercises substantial discretion in deciding whether grand jury transcripts should

be disclosed.  Douglas Oil, 441 U.S. at 218.

In this case, Defendant has failed to show a compelling and particularized need

that would justify the release of grand jury transcripts.  As an initial matter, the District

Court already determined that the Superseding Indictment alleged facts and

circumstances that support the mail fraud and bank fraud charges.  (Doc. 46).  This

Court agrees.  The current charging instrument, the Second Superseding Indictment,

only amended the identity of the victim, which does not justify reconsideration of the

well-reasoned decision.  An indictment is legally sufficient if it "'(1) presents the

essential elements of the charged offense, (2) notifies the accused of the charges to be

defended against, and (3) enables the accused to rely upon a judgment under the

indictment as a bar against double jeopardy for any subsequent prosecution for the

same offense.'" United States v. Masino, 869 F.3d 1301, 1306 (11th Cir. 2017)

(quoting United States v. Lang, 732 F.3d 1246, 1247 (11th Cir. 2013)).  The Second

Superseding Indictment is facially valid, as it charges the language in the statute and

provides sufficient factual detail.  United States v. McNair, 605 F.3d 1152, 1186 (11th

Cir. 2010) ("It is well established in this Circuit that an indictment is sufficient if it tracks the language of the statute and provides a statement of facts that gives notice of the offense to the accused.").

The Second Superseding Indictment tracks the language of the mail fraud statute. Paragraph 9 is drafted in substantially the same language as the mail fraud statute. 18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

18 U.S.C. § 1343. Paragraph 9 of the Second Superseding Indictment provides:

> On or about March 21, 2011, in the Northern District of Georgia and elsewhere, the Defendant BENNETT L. KIGHT ("Kight") for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and material omissions, with intent to defraud, did knowingly cause to be delivered by mail and by any private or commercial interstate carrier according to the direction thereon, a publicly recorded deed to 400 Glen Arden Place, Atlanta, Georgia, that Kight backdated and caused to be backdated to reflect a transfer of such property on or about July 28, 2005. All in violation of Title 18, United States Code, § 1341.

(Doc. 184, ¶ 9).

Likewise, Paragraph 17 of the Second Superseding Indictment tracks the

language of the bank fraud statute. 18 U.S.C. § 1344 provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.  Paragraph 18 of the Second Superseding Indictment provides:

> Between in or about October 2010 and on or about January 23, 2012, in the Northern District of Georgia and elsewhere, the Defendant, Bennett L. Kight ("Kight"), knowingly executed and attempted to execute, and willfully caused the execution and attempted execution of, a scheme and artifice (i) to defraud a financial institution, and (ii) to obtain moneys, funds, and assets owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations and promises, that is obtaining a $400,000 mortgage loan for R.K. on or about January 18, 2012, from SunTrust Mortgage, Inc. and SunTrust Bank, by means of the fraudulent deed to 400 Glen Arden Place that Kight caused to be prepared and publicly recorded.  All in violation of Title 18 United States Code, ¶¶ 1344, 2.

(Doc. 184, ¶ 18).

An indictment valid on its face is not subject to challenge that the grand jury indicted based on inadequate or incompetent evidence.  As the Supreme Court held:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment.

8

Costello v. United States, 350 U.S. 359, 363 (1956).  Despite evidence developed at trial that the only witnesses before the grand jury were three officers whose information was based on hearsay, the Supreme Court in Costello denied a motion to dismiss the indictment, explaining that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." Id.

Similarly, in Holt v. United States, 218 U.S. 245 (1910), the defendant sought to quash an indictment after discovering the grand jury was presented with admissions the defendant made under circumstances that rendered them incompetent.  Id. at 247-48.  The Supreme Court held that such a circumstance did not justify reviewing the evidence presented to the grand jury, explaining that "[t]he abuses of criminal practice would be enhanced if indictments could be upset upon such a ground."  Id. at 248. Factual disputes and defenses, including those Defendant seeks to put before the Court through the evidence attached to its Motion, should be resolved by the finder of fact.[3] In United States v. Ressler, No. 1:06-CR-103-1-TWT, 2007 WL 602210 (N.D. Ga. Feb. 16, 2007), the defendant argued that grand jury transcripts should be disclosed

---

[3] The underlying factual dispute is illustrated by the Government's response that structuring the sale as a transfer between "shell companies" was an act of concealment. (Doc. 38, at 7).

because no competent evidence could have been presented to the grand jury to support the charges, and the transcripts would prove as much. Id. at *6. The court refused to order the release of the transcripts either to the defendant or for *in camera* review, finding that the defendant "merely seeks to avoid the rule that courts do not look beyond the face of an indictment to determine its validity." Id. The same result is appropriate here.

Here, Defendant will not be allowed to inspect the grand jury minutes to challenge the sufficiency of the evidence supporting a facially valid indictment. United States v. Tallant, 407 F. Supp. 878, 883 (N.D. Ga. 1975) ("It is well settled that an indictment is not subject to challenge on the ground that the Grand Jury acted on the basis of inadequate or incompetent evidence."). The Court finds that Defendant has not demonstrated any compelling or particularized need for the release of grand jury transcripts. Accordingly, the Court **RECOMMENDS** that Defendant's Motion for Production of Grand Jury Transcripts be **DENIED**. (Doc. 34).

## III.   MOTIONS IN LIMINE TO EXCLUDE EXPERT TESTIMONY

Defendant filed a Motion *in Limine* to Exclude the Opinions and Testimony of Robert Danforth. (Doc. 164). The Government disclosed Danforth as an expert witness who will provide testimony on the following subjects: (1) standards of care for attorneys and attorneys-in-fact, (2) application of standards of care and conduct for

10

attorneys-in-fact, and (3) scope of the power of attorney.  (Doc. 164-3, at 13-21).

Defendant does not challenge Danforth's credentials but contends that his testimony

should be excluded because it is not relevant and because its prejudicial impact

outweighs its probative value.  (Doc. 164-1, at 8-25).  After the grand jury returned the

Second Superseding Indictment, the Government amended its Rule 16 disclosure to

state that Danforth would "analyze and opine on whether Bennett L. Kight was

obligated to disclose information to members of the Bunzl family due to the standards

of care or conduct applicable to him in his capacity as attorney-in-fact or trustee"

related to the two transactions.  (Doc. 210).  Defendant then filed a Renewed Motion

*in Limine* to Exclude the Opinions and Testimony of Robert Danforth.  (Doc. 205).

Therein, Defendant renewed his arguments asserting that Danforth's testimony is not

relevant under FRE 401 and should be excluded under FRE 402 and 403.  (Doc. 205-

1).

According to Defendant, Danforth's testimony about Defendant's fiduciary

duties is irrelevant.  (Doc. 164-1, at 8-15; Doc. 205-1, at 9-15).  Defendant points out

that the Government brought fraud charges against him under the theory of traditional

money or property theft and not theft of honest services, which Defendant claims

renders any breach of fiduciary duty irrelevant.  (Doc. 164-1, at 13-15; Doc. 205-1, at

13-15).  Defendant relies heavily on United States v. Skilling, 561 U.S. 358 (2010).

11

Skilling held that a mail fraud or wire fraud charge predicated on depriving another of the intangible right to honest services requires a bribe or kickback supplied by a third party. Id. at 402-04. Defendant asserts that whether he breached his fiduciary duties is not relevant to a traditional fraud charge; therefore, the Government is trying to circumvent Skilling's requirement that theft of honest services involve a bribe or kickback. (Doc. 174, at 13; 205-1, at 13-15). Defendant interprets Skilling's purpose to be preventing "government overreaching by circumscribing the government's ability to prosecute undisclosed self-dealing standing alone," and contends the Government is inappropriately using a fiduciary expert to bolster a traditional fraud charge. (Doc. 205-1, at 14). Defendant further argues Danforth has no expertise in Georgia real estate and LLC laws, and an expert is not required to explain the duties of a trustee and attorney to the jury. (Doc. 174, at 14-15).

The Government agrees that Defendant has not been charged under a theft of honest services theory. (Doc. 168, at 16). The Government, however, argues Danforth's testimony is relevant to show that Defendant failed to disclose material facts and embezzled funds entrusted to him as a fiduciary. (Id. at 10-15). The Government asserts that Skilling does not speak to the traditional "money or property" fraud alleged here. (Id. at 16-19). The Government observes that Defendant already made the argument that a breach of fiduciary duty could not support a mail fraud charge without

bribery or kickbacks, which the District Court rejected in denying Defendant's motion to dismiss that charge.  (Id. at 5-8).

### A.    Danforth's Testimony is Relevant Under FRE 401

The Court finds Danforth's testimony to be relevant under FRE 401.  Evidence is relevant if "it has any tendency to make a fact more or less probable" or "is of consequence in determining the action." Fed. R. Evid. 401.  The Second Superseding Indictment is clear that Defendant's role as attorney and trustee was critical to the alleged scheme and artifice to defraud.  (Doc. 184, ¶ 3).  Defendant is accused of using his authority over the Trusts' assets to misappropriate funds without informing the family who owned and were beneficiaries of the Trust.  (Id.).

The existence of a fiduciary relationship can give rise to a duty of disclosure. Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1312-13 (11th Cir. 2000) (explaining that a duty to disclose can arise from the relationship between the parties, such as a fiduciary relationship); United States v. Brown, 79 F.3d 1550, 1557 (11th Cir. 1996) (explaining that a special relationship of trust, such as a fiduciary relationship, can give rise to a duty of disclosure where nondisclosure could result in harm), overruled on other grounds by United States v. Svete, 556 F.3d 1157 (11th Cir. 2009); United States v. Altman, 48 F.3d 96, 102 (2nd Cir. 1995) (finding the defendant fiduciary committed fraud by concealing material information that could or did result in harm to the

beneficiaries).  As the Eleventh Circuit instructed in Langford, "determinations as to whether a duty to disclose information exists must be made on a case by case basis, with appropriate attention given to the nature of the transaction and the relationship between the parties."  Langford, 231 F.3d at 1313.

A breach of a duty owed to another can support a fraud charge, even where the result is a tangible loss of money or property.  See Carpenter v. United States, 484 U.S. 19, 27 (1987) ("The concept of 'fraud' includes the act of embezzlement, which is 'the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another." (quoting Grin v. Shine, 187 U.S. 181, 189 (1902)); Altman, 48 F.3d at 101 ("By embezzling the estate funds with which he was entrusted as a fiduciary, [defendant] effectuated a scheme to defraud within the meaning of the mail fraud statute . . .").  In Carpenter v. United States, the Supreme Court held that a journalist undertook a duty not to disclose pre-publication information as part of his job and committed fraud by appropriating confidential information for his own use while pretending to safeguard it.  484 U.S. at 27-28.  In another example, the former Fifth Circuit found that a fraud charge could be rooted in insurance agents' breach of their fiduciary duty to deal openly and honestly with the principal by withholding facts that should have been disclosed, surreptitiously taking money, and disguising their involvement in transactions where they had a conflict.  United States v. Kreimer, 609

14

F.2d 126, 131 (5th Cir. 1980).  There the court concluded that the insurance agents' conduct could be construed as fraudulent under the fiduciary-type duty the agents' owed to their client.  Id. at 131-32.

In addition, a fiduciary's failure to disclose material facts can be used to show intent to commit fraud.  See United States v. Sprouse, 517 F. App'x 199, 206 (4th Cir. 2013) (holding that an attorney's misrepresentations and ethical violations are relevant to honest services fraud but "equally probative of [defendant's] knowledge and intent to defraud with respect to the pecuniary fraud theory . . . "); United States v. O'Malley, 707 F.3d 1240, 1247 (11th Cir. 1983) (holding that the intent to commit mail fraud can be proven through "non-action or non-disclosure of material facts intended to create a false and fraudulent representation").

Contrary to Defendant's assertions, Skilling does not require a different conclusion.  Skilling held that a bribe or kickback from a third party is required for theft of honest services fraud.  561 U.S. at 404.  Both sides agree that Defendant has not been charged with theft of honest services fraud.  Most of the cases cited by Defendant are pure honest services cases that did not involve the theft of money or property.  See United States v. Aunspaugh, 792 F.3d 1302, 1305, 1308 (11th Cir. 2015) (defendant allegedly steered contracts to a company owned by his family and received a portion of the profits); United States v. Siegelman, 640 F.3d 1159, 1164, 1173-74

(11th Cir. 2011) (defendants allegedly made a political donation in exchange for an appointment and used that appointment to obtain favorable treatment); United States v. Davidson, 399 F. App'x 525, 526-28 (11th Cir. 2010) (defendant accused of undisclosed self-dealing).  Defendant also cites to United States v. Katopodis, in which the defendant sought to reverse his conviction for fraud by challenging the jury instructions on fraud as improper under Skilling because they did not include the requirement of a bribe or kickback.  428 F. App'x 902, 904 (11th Cir. 2011).  The Eleventh Circuit noted that the evidence focused on the defendant's scheme to defraud the charity and donor of money, and concluded that, even if the jury instruction on honest services fraud was flawed, the defendant had not shown a reasonable possibility that he would not have been found guilty of traditional money or property fraud.  Id. at 904 ("Given the overwhelming focus on [defendant's] fraudulent representations and improper spending, [defendant's] argument that the case was mainly about honest services is unpersuasive.").  The cases cited by Defendant fail to persuade the Court that expert testimony explaining fiduciary duties is not relevant to the case at hand.

Defendant also contends that the Danforth's opinions are premised on inaccurate information about the nature of the sale and the effect of the Deed, citing to his own expert's affidavit about the nature of the transaction, and arguing that no deed transfer was ever contemplated. (Doc. 164-1, at 18-25).  The Court agrees with the Government

that a factual disagreement about the nature of the transaction does not render Danforth's opinions irrelevant.  Such factual disputes are properly resolved at trial.

The Court finds that Danforth's expert testimony concerning the relationships between Defendant and the purported victims, as well as any special duties of care arising from, is relevant to the fraud charges brought against him.  Accordingly, the Court **RECOMMENDS** that Defendant's Motion *in Limine* to Exclude the Opinions and Testimony of Robert Danforth (Doc. 164) and Renewed Motion *in Limine* to Exclude the Opinions and Testimony of Robert Danforth (Doc. 205) be **DENIED** to the extent they seek exclusion under FRE 401 and 402.

### B.    FRE 403 Does Not Require the Exclusion of Danforth's Testimony

Defendant next contends that even if Danforth's testimony is relevant, its probative value is substantially outweighed by danger of prejudice.  (Doc. 164-1, at 15-18, Doc. 174, at 14-15; Doc. 205-1, at 15-18).  Defendant argues the inclusion of Danforth's testimony will lead the jury to convict Defendant for a breach of fiduciary duties instead of traditional mail and bank fraud.  (Doc. 164-1, at 17; Doc. 174, at 15). Defendant also contends that an expert is not needed for facts within the understanding of an average juror.  (Doc. 164-1, at 17-18; Doc. 174, at 14-15; Doc. 205-1, at 16-17). The Government responds that excluding expert testimony is an extraordinary remedy

for potential juror confusion, particularly where cross-examination is available, and a limiting instruction can be given to the jury.  (Doc. 168, at 21-22; Doc. 175, at 4-5).

Federal Rule of Evidence 403 allows the Court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  The Court has already determined that Danforth's testimony is relevant to helping the jury understand the complex relationships and duties arising therefrom.   Indeed, the Government provided several cases where expert testimony was admitted in fraud cases to explain the duties to disclose that can arise out of a fiduciary relationship. (Doc. 175, at 3-4).  United States v. Walker, 818 F.3d 416, 423 (9th Cir. 2016) (observing that expert testimony at trial about fiduciary duties owed to a corporation supported the sentencing enhancement for a fraud conviction); United States v. Sprouse, 517 F. App'x 199, 202, 206 (4th Cir. 2013) (noting that expert testimony was presented on an attorney's role and ethical duties in real estate transactions); United States v. Keiser, 578 F.3d 897, 904-05 (8th Cir. 2009) (upholding the admission of expert testimony about the fiduciary duties of brokers because it could demonstrate defendant's knowledge and intent).

The Government has agreed to limit Danforth's testimony to his analysis of Defendant's relationship to the Trusts and transactions, as well as only those fiduciary duties that implicate duties to disclose.  (Doc. 175, at 4).   And the Court agrees that a limiting instruction is a more appropriate way to prevent juror confusion than complete exclusion of relevant testimony.  Eghnayem v. Bos. Sci. Corp., 873 F.3d 1304, 1316-17 (11th Cir. 2017) ("[W]hen evidence is relevant for some purposes and not others, limiting instructions—not exclusion—are generally the best way to handle the issue."). Therefore, the Court **RECOMMENDS** that Defendant's Motion *in Limine* to Exclude the Opinions and Testimony of Robert Danforth (Doc. 164) and Renewed Motion *in Limine* to Exclude the Opinions and Testimony of Robert Danforth (Doc. 205) be **DENIED** to the extent they seek exclusion under FRE 403.

## IV.   Motion to Dismiss Counts One and Two of  the Superseding Indictment

Defendant moves to dismiss the charges of bank fraud and mail fraud, the only two counts brought in the Second Superseding Indictment[4] under Federal Rule of

---

[4] After Defendant filed the Motion to Dismiss Counts One and Two of His Superseding Indictment, the grand jury returned a Second Superseding Indictment. (Doc. 184).  Defendant filed a notice of his intent to have the Motion to Dismiss Counts One and Two refiled against the Second Superseding Indictment. (Doc. 195).  Further, the Second Superseding Indictment is identical to the Superseding Indictment except for the identity of the victim. (Compare Doc. 15 with Doc. 184).  The victim's identity does not affect the Court's analysis, so the Court will construe Defendant's Motion to Dismiss Counts One and Two of the Superseding Indictment as challenges to the Second Superseding Indictment.  See United States v. Detling, No. 1:18-CR-00309-

Criminal Procedure 12(b).  (Doc. 177, at 4).  Defendant has attached a half-page

document purporting to contain the terms of the January 2006 transaction between the

parties regarding the Property.  (Doc. 177-4).  Defendant relies on his expert's opinion

that the document contemplated a joint venture agreement and not a real estate purchase

agreement that would require a transfer of title.  (Doc 171-1, at 9-11; Doc. 177-2, Ex.

A; Doc. 177-3, Ex. B).  According to Defendant, because the Deed was a "perfectly

valid representation of title," it cannot be the source of a false statement to a financial

institution necessary for bank fraud.  (Id. at 18).  Defendant also contends that the mail

fraud charge is time-barred because the mailing of the valid Deed is the only act falling

within the limitations period.  (Id. at 19-24).  In the alternative, Defendant asks for

sequencing of the Government's proof about whether Defendant undertook to convey

title to the Property to the victim before the Government can refer to the Deed as

fraudulent.  (Id. at 25).

    The Government responds that the Court previously considered and denied

---

LMM-LTW, 2019 WL 3006623, at *1 (N.D. Ga. Apr. 30, 2019), report and
recommendation adopted, No. 1:18-CR-309-LMM-LTW, 2019 WL 2284726 (N.D.
Ga. May 29, 2019) (recommending the motions directed at original indictment be
construed as against a superseding indictment); United States v. Delgado, No. 2:17-
CR-511-WKW, 2018 WL 3029282, at *2 (M.D. Ala. Apr. 20, 2018), report and
recommendation adopted sub nom. United States v. Kumar, No. 2:17-CR-511-7-
WKW, 2018 WL 3025952 (M.D. Ala. June 18, 2018) (same).

Defendant's motion to dismiss the indictment and should do so again. (Doc. 183, at 1-3). The Government points out that the Court previously determined that the mail fraud scheme charged in the indictment includes not only the initial misappropriation of funds but also acts taken "to disguise ownership of the property." (Id. at 5-6). The Government asserts the Court correctly held that whether Defendant backdated the Deed to perpetuate a fraud is "an issue to be decided at trial." (Id. at 9). The Government also notes that the expert reports on which Defendant relies opine about factual issues not appropriately considered on a motion to dismiss. (Id. at 6-7, 11-12). Finally, the Government argues Defendant's motion is untimely because it was not filed before the pretrial motion deadline of June 29, 2016, set by the Court. (Id. at 10). The Government contends that Defendant does not have good cause for its untimely motion because the bases for the motion to dismiss were reasonably available before the deadline, and Defendant already filed a motion to dismiss on similar grounds. (Id. at 11).

### A.    Legal Standard

"It is well established in this Circuit that an indictment is sufficient if it tracks the language of the statute and provides a statement of facts that gives notice of the offense to the accused." United States v. McNair, 605 F.3d 1152, 1186 (11th Cir. 2010). An indictment is legally sufficient if it "(1) presents the essential elements of

the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Masino, 869 F.3d 1301, 1306 (11th Cir. 2017) (quoting United States v. Lang, 732 F.3d 1246, 1247 (11th Cir. 2013)).  On a motion to dismiss, the Court is limited "to reviewing the face of the indictment and, more specifically, the language used to charge the crimes"; the Court "may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (alteration in original) (quotation omitted).

**B.    Analysis**

1.    The Motion is Timely

The Court observes that the deadline for filing pre-trial motions in this case was June 29, 2016.  (Doc. 26).  Defendant's Motion to Dismiss Counts One and Two of the Superseding Indictment was filed on April 9, 2019, close to three years later.  (Doc. 177).  While there is no order in the record clearly extending the deadline for pretrial motions, Judge Totenberg's order decertifying the case on May 7, 2019, contemplates the Court's consideration of this motion.  (Doc. 190).  This Court interprets the decertification order as approving of the late-filed motion, and therefore finds it appropriate to consider its merits.

2.    The Second Superseding Indictment Should Not be Dismissed

Defendant expressly states that he is not challenging whether the mail and bank fraud counts in the superseding indictment are sufficiently pled.  (Doc. 188, at 5). Instead, Defendant asserts the mail fraud and bank fraud counts should be dismissed as legally defective, relying on the document attached to his motion purporting to memorialize the January 2006 transaction and his expert's opinion concerning the legal validity of the Deed.  (Id. at 6-7).  Essentially, Defendant contends that because the written agreement between the parties did not require title to be transferred to the Trusts, the Deed is not "fraudulent" and cannot support the mail and bank fraud counts.

Defendant is not afforded a pre-trial determination of the sufficiency of the evidence, as "the sufficiency of a criminal indictment is determined on its face." United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004).  The Court must accept the facts in the indictment as true and may not rely on outside facts presented by Defendant, as factual disputes need to be decided at trial.  United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (holding that district court should not have dismissed indictment based on evidence of receivership orders that were not part of the indictment); United States v. Plummer, 221 F.3d 1298, 1302 n.3 (11th Cir. 2000) (reversing the dismissal of an indictment because the district court relied upon facts not in the indictment); United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987) ("[A] court may not

dismiss an indictment . . . on a determination of facts that should have been developed at trial."). Thus, the Motion to Dismiss Counts One and Two of the Superseding Indictment is due to be denied because it is based on evidence not properly before the Court at this juncture.

Even if the Court were to assume the attached document memorializes the January 2006 transaction between the parties and credit the expert opinions, the mail fraud count is not due to be dismissed as legally defective. The mail fraud statute provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

18 U.S.C. § 1343. Contrary to Defendant's assertion, whether the Deed is valid as an instrument to transfer title under Georgia law does not dictate the outcome of this case. This is precisely the point Judge Duffey made in denying Defendant's first request to dismiss the mail fraud charge: "The Court should not and does not speculate whether Kight's alleged backdating of the deed was used to perpetuate a fraud. That is an issue to be decided at trial." (Doc. 46, at 10-11). This Court agrees. Cf. United States v. McGill, 634 F. App'x 234, 235 (11th Cir. 2015) (holding that the factual determination

24

of whether the defendant communicated with an adult or a minor goes to the sufficiency of the evidence and should be determined at trial).

Similarly, bank fraud is defined as knowingly executing or attempting to execute a scheme or artifice "(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. Again, Defendant fails to persuade the Court that the Deed's purported validity as a matter of Georgia title law renders the bank fraud count legally defective. A violation of the bank fraud statute requires a false statement that naturally induces a bank to part with money in its control. Loughrin v. United States, 573 U.S. 351, 363 (2014). Defendant's argument extends beyond its logical boundaries when it claims a deed that effectively transfers title does not contain a false statement. The indictment alleges Defendant backdated the Deed to conceal the January 2006 transaction, and Defendant knew the Deed would be used to obtain a mortgage loan on the property for his son. (Doc. 184, ¶¶ 4, 12). As Judge Duffey previously explained, "backdating of a legal instrument may be done to perpetuate a fraud." (Doc. 46, at 13). The finder of fact must ultimately decide this question.

Finally, Defendant asks the Court to order "sequencing of the government's proof to address whether Mr. Kight legally undertook to convey title to his former

residence to the Bunzls before it may refer to the deed charged in Counts One and Two as being fraudulent." (Doc. 177-1, at 25). It appears that Defendant is seeking an order constraining the Government from using the term "fraudulent" when referencing the Deed at trial. Whether the Government may use a term at trial should not be decided during the pre-trial phase of the case. For the reasons explained above, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss Counts One and Two of the Superseding Indictment should be **DENIED**. (Doc. 177).

## V.    MOTION TO DISMISS SECOND SUPERSEDING INDICTMENT

After the grand jury returned the Second Superseding Indictment, Defendant filed a Motion to Dismiss Second Superseding Indictment for Lack for Probable Cause and Because it Constitutes a Substantive, and Therefore Out-of-Time Amendment of His First Superseding Indictment ("Second Motion to Dismiss"). (Doc. 196).

### A.    Analysis

#### 1.    The Second Superseding Indictment Should Not Be Dismissed for Lack of Probable Cause

Defendant argues the Second Superseding Indictment is not supported by probable cause because "on its face, it reveals that the government failed to instruct the jury on "present controlling legal authority" that the Deed is actually a valid title instrument. (Doc. 196-1, at 11). Defendant reasserts his arguments that (1) the Government is mistaken that the January 2006 transaction contemplated a transfer of

title, and (2) the Deed referred to as fraudulent in the Second Superseding Indictment is valid as a matter of Georgia law.  (Id. at 11-17).  Based on this argument, also raised in Defendant's earlier motions, Defendant concludes that the Government must have failed to instruct the grand jury on the laws regarding LLCs and real property transfers. (Id. at 17).

The Government responds that indictments are not open to challenge based on insufficient or incompetent evidence put before the grand jury. (Doc. 198, at 6-7).  The Government contends Defendant's argument is based on facts that need to be developed at trial.  (Id. at 12).  The Government asserts it was not required to present Defendant's theory of the case based on its expert opinions to the grand jury.  (Id. at 8).  Further, the Government contends that even if Defendant's theory should have been presented to the grand jury, his argument about the deed's validity as a title instrument is not a defense to the mail or bank fraud charges.  (Id. at 11).  The Government also points out that Judge Duffey previously ruled that even if the Deed was valid as a matter of Georgia law, it may still have a fraudulent purpose.  (Id. at 13).

In his reply, Defendant alleges his Second Motion to Dismiss does not rely on omitted facts, but assumes the facts in the Second Superseding Indictment to be true, and argues the Government should have presented the law on LLCs and real property transfers to the grand jury.  (Doc. 203, at 4-6).  Defendant then restates an argument

from his Motion to Dismiss Counts One and Two of the Superseding Indictment: that the counts are legally defective and time-barred because the Deed was legally valid as a matter of Georgia law.  (Id. at 8-15).  Defendant also restates an argument addressed in its Motion to Exclude Expert Testimony, namely that the Government cannot proceed under a material omissions theory following Skilling v. United States, 561 U.S. 358 (2010).[5]

The Court has already observed that indictments cannot be dismissed based on a pre-trial determination of the sufficiency of the evidence.  See Costello v. United States, 350 U.S. 359, 364 (1956) (refusing to allow defendants to challenge an indictment as not being supported by adequate or competent evidence); United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (holding that district court should not have dismissed an indictment based on evidence of receivership orders that were not part of the indictment); United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987) ("Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial."); United States v. Ressler, No. 1:06-CR-103-1-TWT, 2007 WL 602210 (N.D. Ga. Feb. 16, 2007)

---

[5] The Court has already addressed this argument and will not do so again here.

(refusing to look beyond the indictment to conclude whether a fact contained in the indictment was supported by the evidence).  Defendant's argument for dismissing the Second Superseding Indictment for lack of probable cause necessarily relies on a document attached to a previous motion, as well as expert opinions that the Deed is valid as a matter of Georgia law.  It is improper to employ a summary judgment-type procedure and consider evidence beyond the four corners of the indictment on a motion to dismiss.

Even if the Court were to consider Defendant's evidence, the Court would still deny Defendant's request to dismiss the Second Superseding Indictment for lack of probable cause.  Defendant's argument assumes the Government's prosecution is contingent on the Deed being ineffective to transfer title under Georgia law.  But Defendant has pointed to no authority that supports such a contention.  The indictment clearly alleges that Defendant backdated the Deed to conceal the January 2006 transaction, and Defendant knew the Deed would be used to obtain a mortgage loan on the property for his son.  (Doc. 184, ¶¶ 4, 12).  As explained earlier, the Court agrees with Judge Duffey's previous holding that the Court "should not and does not speculate whether Kight's alleged backdating of the deed was used to perpetuate a fraud.  That is an issue to be decided at trial."  Therefore, the Court **RECOMMENDS** that Defendant's Motion to Dismiss the Second Superseding Indictment, to the extent that

it is based on a lack of probable cause, be **DENIED**.  (Doc. 198).

2.      The Second Superseding Indictment is Not Time-Barred

Defendant also contends the Second Superseding Indictment is time-barred because it broadens or substantially amends the original charges.  (Doc. 196-1, at 19-22).  The Second Superseding Indictment changes the victim from "F.B." to "Trusts held for the benefit of F.B.'s children and their lineal heirs."  (Id. at 20-21; see also Docs. 15, 184).  Defendant argues the change in the victim's identity alters the nature of the fiduciary duty Defendant owed and should not be allowed as a matter of equity. (Doc. 196-1, at 22, 24).

The Government responds that courts have rejected Defendant's position that altering the victims substantially amends the indictment.  (Doc. 198, at 17-18).  The Government argues that establishing a different victim at trial does not impermissibly amend the indictment, even though amendments at trial are subject to a higher standard than superseding indictments.  (Id. at 19).  As to the mail fraud scheme, the Government asserts that the victim's identity is irrelevant because mail fraud does not require a contemplated harm to a specific victim.  (Id. at 20).  Further, the Government contends Defendant has been on notice that F.B.'s family were victims of the scheme because the original Indictment in 2016 mentions Defendant's representation of F.B. and her family and role managing trusts held for the benefit of F.B. and her family.  (Id. at 21).

The Government also points to other instances in which F.B.'s family is mentioned in the Superseding Indictment filed in May 2016, a Rule 404(b) notice filed in June 2016, and the anticipated testimony of Robert Danforth disclosed in January 2017.  (Id. at 22).  The Government notes that Defendant clearly understood the transaction at issue, as Defendant stated in a June 2016 motion that the funds came from LLCs "owned by trusts created for the benefit of F.B.'s husband's lineal descendants."  (Id. at 22-23).  The Government responds to Defendant's equitable argument by stating that there is no equitable remedy of dismissal on statute of limitations grounds, and the fact that alterations may affect Defendant's anticipated defenses does not render the second superseding indictment untimely.  (Id. at 24).

A superseding indictment is not barred by the statute of limitations if it is returned while the prior indictment is still pending and does not broaden or substantially amend the charges.  United States v. Italiano, 894 F.2d 1280, 1282 (11th Cir. 1990).  "Notice to the defendant is the central policy underlying the statutes of limitation."  Id. at 1283.  The Court finds that the Second Superseding Indictment did not broaden or substantially amend the charges.  The Second Superseding Indictment clarified that Defendant is alleged to have misappropriated $2 million not from "accounts owned and held for the benefit of F.B." but from "accounts owned and held for the benefit of the Trusts," identified as "two trusts held for the benefit of F.B's

children and their lineal descendants." (<u>Compare</u> Doc. 15 ¶ 3 <u>with</u> Doc. 184 ¶¶ 2-3). This change, which is made throughout the Second Superseding Indictment, does not broaden or substantially amend the charges against Defendant.  <u>See</u> <u>United States v. Farias</u>, 836 F.3d 1315, 1324 (11th Cir. 2016) (adding an additional object of a conspiracy does not broaden or substantially amend the original charges); <u>United States v. McMillan</u>, 600 F.3d 434, 444-45 (5th Cir. 2010) (adding new victims of the scheme does not impermissibly broaden the charges); <u>United States v. Italiano</u>, 894 F.2d 1990, 1984-85 (11th Cir. 1990) (changing the object of the scheme does not broaden or substantially amend the original indictment where approximately the same facts were used as the basis of both indictments); <u>United States v. Huff</u>, No. S2 12 CR 750 NRB, 2015 WL 463770, at *3 (S.D.N.Y. Feb. 4, 2015) (adding victims does not render the superseding indictment untimely where the scheme charged is exactly the same); <u>United States v. Knock</u>, No. 1:94-cr-010009-MP-AK, 2008 WL 817103, at *12 (N.D. Fla. Mar. 24, 2008) (adding a defendant and clarifying the dates of the charges did not broaden or substantially amend the original indictment); <u>United States v. Attallah</u>, No. 99-903-CR-HUCK, 2000 WL 36733970, at *1 (S.D. Fla. Nov. 17, 2000) (adding the allegation that defendant cashed a check resulting from the already charged criminal enterprise of arson does not broaden or substantially amend the charges).

The only authority provided by Defendant can be easily distinguished on its facts; it involved a superseding indictment that expanded the length of the conspiracies by twelve years, the number of conspiracies from one venture with five co-conspirators to eight ventures with fifteen or more co-conspirators, and the pounds of marijuana involved from 1,500 pounds to 6,800 pounds. United States v. Ratcliff, 245 F.3d 1246, 1253-54 (11th Cir. 2001). Here, Defendant's alleged misconduct is unchanged from the Superseding Indictment to the Second Superseding Indictment. See Italiano, 894 F.2d at 1285 (explaining that the relevant facts were defendant's actions performed as part of the scheme, which were the same in both indictments). Correcting the beneficiary of the account Defendant allegedly appropriated funds from is not a substantial amendment. See United States v. McMillan, 600 F.3d 434, 444-45 (5th Cir. 2010) (adding a victim); Knock, 2008 WL 817103, at *12 (clarifying dates). The Court concludes that the Second Superseding Indictment did not broaden or substantially amend the charges against Defendant. Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Dismiss the Second Superseding Indictment as untimely be **DENIED**. (Doc. 198).

## CONCLUSION

The Court **RECOMMENDS** that Defendant's Motion for Production of Grand Jury Transcripts (Doc. 34), Motion in Limine to Exclude the Opinions and Testimony

of Robert Danforth (Doc 164), Motion to Dismiss Counts One and Two of His Superseding Indictment (Doc. 177), Motion to Dismiss Second Superseding Indictment (Doc. 196), and Renewed Motion in Limine to Exclude the Opinions and Testimony of Robert Danforth (Doc. 205) be **DENIED**.

   **SO REPORTED AND RECOMMENDED** this   16   day of March, 2020.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE