IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,          :
                                   :
          v.                       :          CRIMINAL PROCEEDING:
                                   :
BENNETT L. KIGHT,                  :          1:16-cr-0099-AT
                                   :
          Defendant.               :
                                   :

## **ORDER**

Currently pending before the Court is the Magistrate Judge's Report and Recommendation ("R&R") of March 16, 2020 [Doc. 217]. The Magistrate Judge recommends the Court deny the following motions by Defendant:

- Motion for Production of Grand Jury Transcripts (Doc. 34);

- Motion in Limine to Exclude the Opinions and Testimony of Robert Danforth (Doc 164);

- Motion to Dismiss Counts One and Two of His Superseding Indictment (Doc. 177);

- Motion to Dismiss Second Superseding Indictment (Doc. 196); and

- Renewed Motion in Limine to Exclude the Opinions and Testimony of Robert Danforth (Doc. 205).

Defendant Bennett Kight filed objections to the R&R ("Objection") on April 29, 2020. (Doc. 223.)

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a de novo basis and any non-objected portion on a "clearly erroneous" standard.

## I.    Background

Defendant was originally indicted by a grand jury on March 16, 2016. (Doc. 1.) A Superseding Indictment was issued on May 18, 2016, which added a charge of bank fraud. (Doc. 15.) A Second Superseding Indictment ("SSI") was issued on May 7, 2019, which is the current charging instrument. (Doc. 184.) The SSI charges one count of mail fraud, in violation of 18 U.S.C. § 1341 (Count One), and one count of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2 (Count Two). (*Id.*)

The SSI charges that as a lawyer, Kight was "responsible for managing and overseeing trusts, investments, entities, and assets owned and held for the benefit of F.B. and her family, including two trusts held for the benefit of F.B.'s children and their lineal descendants." (collectively, the "Trust"). (SSI ¶ 2.)

 Count One, Mail Fraud, alleges, among other things, that [i]n January 2006, [Defendant] Kight used his responsibility over [certain Trust] assets to misappropriate approximately $2 million from accounts owned and held for the benefit of the Trusts." (*Id.* ¶ 3.) The SSI alleges that [w]ithout informing the F.B. family [the beneficiary of the Trust], Kight obtained approximately $2 million by purporting to sell the Trust[] his former personal residence, 400 Glen Arden Place

in Atlanta, Georgia." (the "Glen Arden Property") (*Id.*) "To facilitate this purported transaction," it is alleged, "Kight caused two limited liability companies to be formed that purportedly would own and hold title to 400 Glen Arden Place for the Trust['s] benefit." (*Id.*)

Defendant vigorously disputes that a sale of the Glen Arden Property between him and the Trust was ever contemplated, pointing to language in the Purchase Agreement that the seller was selling "the 100% member interest" in SCT Holdings 400 GAP LLC ("SCT 400") which was, according to the Purchase Agreement, "the owner of the real property at 400 Glen Arden Place." However, this was a misrepresentation, as Defendant's wife was apparently the owner of the Glen Arden Property at the time. (SSI ¶ 6.) In any case, per the Purchase Agreement, the seller would "have the responsibility for planning, supervising and executing the renovation and sale of the Property" to a third party, after which the proceeds would be split among purchaser and seller. (Doc. 177-4.)

No such transaction ever occurred:

> On or about January 26, 2006, Kight obtained approximately $2 million from accounts owned by or held for the benefit of the Trusts. Kight used approximately $500,000 of this money to pay off his mortgage on 400 Glen Arden Place. Although Kight obtained and used this money for his own benefit, no deed transferring 400 Glen Arden Place to the limited liability company through which the Trusts purportedly would own the property was publicly recorded.

(SSI ¶¶ 4.) Instead, Kight "dissolved and caused to be dissolved the two limited liability companies used in the purported January 2006 sale of 400 Glen Arden Place to the Trusts," and in "late 2009, Kight contributed 400 Glen Arden Place to

a new limited liability company that he and his son, R.K., would jointly own." (*Id.*

¶¶ 5–6.) More specifically,

> [i]n December 2010, to facilitate the transfer of 400 Glen Arden Place
> to his son, Kight caused a deed to be prepared misrepresenting that
> on or about July 28, 2005, Kight's wife (who was the record owner of
> the property at that time in 2005) had transferred and caused to be
> transferred 400 Glen Arden Place to a limited liability company
> owned and controlled by Kight."

(*Id.* ¶ 7.) The deed, which was backdated to July 28, 2005, is referred to by the

Defendant as the "Charged Deed," and the Court will use that term for the purpose

of this Order.

On or about March 21, 2011, Kight caused the Charged Deed "to be publicly

recorded and a file stamped copy of such deed to be returned to him pursuant to

the direction thereon via the United States Mail," which the SSI charges was a use

of the mail in the execution of fraud. More broadly, the SSI charges that:

> On or about March 21, 2011, in the Northern District of Georgia and
> elsewhere, the Defendant BENNETT L. KIGHT ("Kight"), for the
> purpose of executing and attempting to execute the aforementioned
> scheme and artifice to defraud, and to obtain money and property by
> means of materially false and fraudulent pretenses, representations,
> and promises, and material omissions, with intent to defraud, did
> knowingly cause to be delivered by mail and by any private or
> commercial interstate carrier according to the direction thereon, a
> publicly recorded deed to 400 Glen Arden Place, Atlanta, Georgia,
> that Kight backdated and caused to be backdated to reflect a transfer
> of such property on or about July 28, 2005.

> All in violation of Title 18, United States Code, § 1341.

(SSI ¶ 9.)

Count Two, Bank Fraud, charges that Defendant caused the Charged Deed

to be recorded knowing it would be used by his son, R.K., to obtain a mortgage

loan, and that the loan was in fact obtained based on the Charged Deed. (*Id.* ¶ 12, 14.) As a result, the SSI charges, "[o]n or about January 18 and 23, 2012, R.K. obtained a mortgage loan for $400,000 from SunTrust Mortgage, Inc. and SunTrust Bank." More broadly, the SSI charges that:

> Between in or about October 2010 and on or about January 23, 2012, in the Northern District of Georgia and elsewhere, the Defendant, Bennett L. Kight ("Kight"), knowingly executed and attempted to execute, and willfully caused the execution and attempted execution of, a scheme and artifice (i) to defraud a financial institution, and (ii) to obtain moneys, funds, and assets owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations and promises, that is obtaining a $400,000 mortgage loan for R.K. on or about January 18, 2012, from SunTrust Mortgage, Inc. and SunTrust Bank, by means of the fraudulent deed to 400 Glen Arden Place that Kight caused to be prepared and publicly recorded.

> All in violation of Title 18, United States Code, §§ 1344, 2.

(SSI ¶ 17.)

## II. Discussion

Defendant raises a number of objections to the R&R, all of which are centered on the Charged Deed's validity. First, he contends that the Magistrate Judge erred by recommending that the Court deny the Rule 12(b) motions because she "failed to consider the impact of the charged deed's legal validity on Mr. Kight's criminal liability." (Obj. at 11.) Second, he contends that the Magistrate Judge erred by finding that the SSI was supported by probable cause. (*Id.* at 21.) Third, he argues that the Magistrate Judge erred by finding that the SSI's mail fraud count was not barred by the five-year statute of limitations. (*Id.* at 23.) Defendant requests that the Court find that:

5

- the SSI's mail fraud count both fails to state a criminal offense and is otherwise time-barred, (Docs. 177 and 195);

- the SSI's bank fraud count fails to state a criminal offense, (Docs. 177 and 195); and

- the SSI's mail and bank fraud counts are unsupported by probable cause, (Doc. 196).

(Obj. at 27–28.) The Court reviews these portions of the R&R *de novo*,[1] and for the reasons that follow, finds no error.

### A.   Both counts of the SSI state a criminal offense regardless of the Charge Deed's validity.

Throughout the pretrial phase of this criminal proceeding, Defendant has repeatedly asserted that the Government has failed to charge a crime because (1) the "Purchase Agreement" with the Trust was not an agreement to sell the Glen Arden Property to the Trust; and therefore (2) the Purchase Agreement did not encumber or otherwise affect title to the Glen Arden Property; and thus (3) the Charged Deed was a valid instrument of title, properly securing the $400,000 SunTrust loan; and (4) the recording of the Charged Deed did not execute a mail fraud scheme. Furthermore, because the only act purportedly in furtherance of the mail fraud count to occur within the statute of limitations was the recording and subsequent return by mail of the Charged Deed, Defendant contends that the

---

[1] The Court has reviewed the remainder of the R&R for clear error and finds none. Accordingly, those parts of the R&R to which no objection was lodged are **ADOPTED**.

statute of limitations bars the mail fraud count.[2] Defendant therefore contends that he is entitled to dismissal of the SSI under Federal Rule of Criminal Procedure 12(b).

Under that rule, a defendant may raise the by pretrial motion the defense that the charging instrument "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). The Magistrate Judge set forth the legal standard for a motion under that rule as follows:

> "It is well established in this Circuit that an indictment is sufficient if it tracks the language of the statute and provides a statement of facts that gives notice of the offense to the accused." *United States v. McNair*, 605 F.3d 1152, 1186 (11th Cir. 2010). An indictment is legally sufficient if it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Masino*, 869 F.3d 1301, 1306 (11th Cir. 2017) (quoting *United States v. Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013)). On a motion to dismiss, the Court is limited "to reviewing the face of the indictment and, more specifically, the language used to charge the crimes"; the Court "may not dismiss an indictment . . . on a determination of facts that should have been developed at trial." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (alteration in original) (quotation omitted).

(R&R at 21–22.)

The mail fraud statute states as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme

---

[2] The 12(b) argument and the statute of limitations argument are thus closely intertwined.

or artifice, shall be fined under this title or imprisoned not more than
20 years, or both. . . .

18 U.S.C. § 1343. "In order to fall within the scope of 18 U.S.C. § 1341, a mailing

must constitute part of the execution of the fraud." *United States v. Hill*, 643 F.3d

807, 858 (11th Cir. 2011) (citing *United States v. Evans,* 473 F.3d 1115, 1118–19

(11th Cir.2006)). "To be part of the execution of the fraud, however, the use of the

mails need not be an essential element of the scheme. It is sufficient for the mailing

to be incident to an essential part of the scheme or a step in [the] plot." *Id.* (quoting

*Schmuck v. United States,* 489 U.S. 705, 710–11 (1989) (internal quotation marks

omitted, alterations in original). "There does come a point at which a mailing will

no longer be considered part of the execution of a fraudulent scheme." *Id.* "After a

scheme has 'reached fruition' mailings generally cannot have been 'for the purpose

of executing the scheme,' as 18 U.S.C. § 1341 requires." *Id.* (quoting *United States

v. Georgalis,* 631 F.2d 1199, 1204 (5th Cir.1980))

The Magistrate Judge held that mailing the Charged Deed was part of

execution of the fraud regardless of its validity, explaining that "whether the Deed

is valid as an instrument to transfer title under Georgia law does not dictate the

outcome of this case." (R&R at 24.) Defendant criticizes this holding in particular,

arguing that "[t]his contention informs the rest of the Magistrate Judge's findings

with respect to Mr. Kight's motions to dismiss. But it is erroneous for multiple

reasons." (Obj. at 13.)

Defendant argues that because the Trust only agreed to purchase shares of

an LLC, the Glen Arden Property was unencumbered by the Purchase Agreement,

and could be freely transferred, including as security for a mortgage loan. Defendant argues that the SSI plainly accuses him of "double-deeding the Glen Arden property" and argues that "the fact that the SSI's mail and bank fraud counts turn on a deprivation of title is not debatable." (*Id.* at 14–15.) He contends that absent a charge of fraudulent misappropriation of real property, what is left is a "prosecution of [a] legitimate deed transaction[,] . . . largely a stranger to the law." (Obj. at 14–15.)

Assuming for the purpose of argument that the Charged Deed is valid, Defendant fails to refute that the recordation and mailing of the Charged Deed constitutes execution of mail fraud if proven at trial. First, Defendant spends a page and a half of his brief discussing how creditors of members of an LLC have no access to the assets of an LLC, which is irrelevant, as no one here is alleged to be a creditor of a member of SCT 400, as opposed to a member (or creditor) of SCT 400 itself. The Trust, through CH 400, purchased "the 100% member interest held by Seller in" SCT 400, which was represented to own the Glen Arden Property at the time of the Purchase Agreement. (Doc. 177-4.)

Next, Defendant relies on a number of cases which reflect the general principal under Georgia law that a limited liability company "member has no interest in specific limited liability company property." O.C.G.A. § 14-11-501. *In re Stadler*, No. 04-91944, 2005 WL 6487189, at *2 (Bankr. N.D. Ga. Mar. 31, 2005) (holding that a creditor did not violate the automatic stay by trying to collect an LLC's receivables because the debtor owned the LLC, not the receivables

themselves); *Veterans Parkway Developers, LLC v. RMW Dev. Fund II, LLC.*, 793 S.E.2d 398, 401 (Ga. 2016) (holding that a majority owner and creditor of an LLC would not suffer irreparable injury from a construction project on LLC property because it did not have an interest in the property itself, and had an adequate remedy at law by bringing a damages claim against the manager); *Collie Concessions, Inc. v. Bruce*, 272 Ga. App. 578 (2005) (holding employer's ownership of LLC which owned parking lot does not constitute ownership of the underlying lot for purpose of the parking lot rule for workers compensation); *Heard v. GMAC Mortgage, LLC*, No. 1:12-cv-4239-WSD, 2013 WL 12109765 (N.D. Ga. July 19, 2013) (holding that the sole member of an LLC does not have standing to seek an injunction against foreclosure against a property owned by the LLC).

    *Veterans Parkway* and *Heard* are arguably closest on point. The argument appears to be: if the creditor and majority owner in *Veterans Parkway* lacked sufficient interest in LLC property to stop the manager from commencing a construction project on LLC-owned property; and if the sole member in *Heard* did not have standing to seek an injunction against foreclosure on LLC-owned property; the Trust, as owners of CH 400 and indirectly SCT 400, had no legal right to stop Kight from transferring the Glen Arden Property to another LLC and encumbering it for entirely personal use. 793 S.E.2d at 401; 2013 WL 12109765. Thus, because Kight could freely transfer the Glen Arden Property, the recordation of the Charged Deed was not execution of mail fraud.

However, all of these cases involved claims by owners or creditors in contract, and none involved misrepresentation, mistake, or embezzlement. Defendant completely fails to address the fact that Purchase Agreement contained a misstatement of fact relievable in equity: that SCT 400 was "the owner of the real property at 400 Glen Arden Place." *Cf. DeGolyer v. Green Tree Servicing, LLC*, 662 S.E.2d 141, 146 (Ga. Ct. App. 2008), (holding that "the failure to have [LLC] either convey the tract to the [member–borrowers], or be included as a signatory on the loan documents . . . constituted a mutual mistake that was relievable in equity" by reformation); *Prince v. Friedman*, 42 S.E.2d 434, 436 (Ga. 1947) ("Equity will also reform an instrument where there is mistake on one side, and fraud or inequitable conduct on the other.").

Thus, Defendant's case law does not necessarily lead to a hard and fast conclusion as a matter of law that the Trust, CH 400, or SCT 400, had no legal or equitable interest in the Glen Arden Property under the Purchase Agreement. Accordingly, the SSI's allegation that recordation of the Charged Deed, backdated to prior to the Purchase Agreement, constituted execution of mail fraud, is sufficient to charge mail fraud.[3]

---

[3] In his Reply brief, Defendant expresses frustration with the Government's refusal to answer "the essential legal liability issue in this case. Namely, what, if any, tangible real property interest did Mr. Kight's alleged victim (or her heirs and assignees) hold in Mr. Kight's former residence to make the charged deed fraudulent in that it somehow deprived her (or them) of this putative title interest?" (Doc. 188 at 1.) In many ways, the Court shares Defendant's frustration. The Government did not respond to the Motion to Dismiss (Doc. 177) until directed to by the Court and did not respond to Defendant's Objection.

Moreover, because the Court again holds that SSI's sufficiently alleges that the recording of the Charged Deed constituted execution of mail fraud, the SSI was validly brought within the statute of limitations. As Judge Duffey wrote in an Order denying a similar motion to dismiss on statute of limitations:

> The indictment, on its face, specifically charges Kight with participating in a "scheme and artifice to defraud, and to obtain money and property." . . . This scheme not only includes Kight's misappropriation of money from F.B.'s accounts but Kight's later acts to defraud F.B. of the Glen Arden property. The two are part and parcel of the same alleged scheme. The conduct also includes the effort between these two events to disguise the ownership of the property.

(Doc. 46 at 10.) "The relevant question at all times is whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time." *Schmuck v. United States*, 489 U.S. 705, 715 (1989). It is for a jury to decide whether Defendant's decision to backdate the Charged Deed to prior to the Purchase

---

The question of whether Defendant's mailing the backdated deed on March 21, 2011 constitutes execution of the charged mail fraud offense is complicated by several facts apparently not at issue in this case: (1) The Purchase Agreement provides for the "renovation and sale" of the Glen Arden Property, rather than the delivery of a deed to the property itself, a fact the Government unconvincingly dismisses as "Defendant's efforts to recast a document titled 'Purchase Agreement,' (doc. 177-4), as something other than that" (Doc. 183 at 8); and (2) the misrepresentation in the Purchase Agreement that SCT 400 was "the owner of the real property at 400 Glen Arden Place" was already false at the time Defendant obtained the $2 million. These facts raise serious questions about whether the mailing of the deed "played a significant part in enabling the defendant . . . to acquire dominion over" the $2 million and the Glen Arden Property. *U.S. v. Maze*, 414 U.S. 395, 401 (1974) (citing *Pereira v. United States*, 347 U.S. 1, 5 (1954)). However, the Court has carefully reviewed the cases cited by the Parties and concludes that these are questions to be posed to the jury in the first instance, absent the Court determining judgment is warranted for Defendant based on the Government's evidence presented at trial. *Cf. Schmuck v. United States*, 489 U.S. 705, 712, 109 S. Ct. 1443, 1448, 103 L. Ed. 2d 734 (1989) ("Under these circumstances, we believe that a rational jury could have found that the title-registration mailings were part of the execution of the fraudulent scheme, a scheme which did not reach fruition until the retail dealers resold the cars and effected transfers of title.").

Agreement for the purpose of encumbering the Glen Arden Property was execution of fraud. It is certainly possible, however, that it might be appropriate for the Defendant to ask for instructions to be given to jury on the legal issues he has raised. Still, these issues must be considered in light of the actual evidence — and disputes as to what the evidence means or reflects.  While Defendant's potential expert testimony may sway the jury or impact trial motions, Defendant's argument does not legally support dismissal of the SSI.

Likewise, the bank fraud count is not implicated by the Charged Deed's validity. The bank fraud statute provides that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. As the Magistrate Judge noted, "[a] violation of the bank fraud statute requires a false statement that naturally induces a bank to part with money in its control." (R&R at 25 (citing *Loughrin v. United States*, 573 U.S. 351, 363 (2014)). It is a jury question whether the bank would have made the loan had it known that the Glen Arden Property was entangled in a supposed as-of-yet unconsummated joint venture, or, as the government argues, an object of embezzlement.

Consequently, ascertaining the purpose of Defendant's recording a deed to property he previously misrepresented was owned by an LLC, backdated to prior to the date of the misrepresentation, is crucial to determining his criminal liability. As Judge Duffey wrote, "[t]he Court should not and does not speculate whether Kight's alleged backdating of the deed was used to perpetuate a fraud. That is an issue to be decided at trial." (Doc. 46 at 10-11). That is still true today.

### B.   Both counts of the SSI are supported by probable cause.

An indictment valid on its face is not subject to challenge that the grand jury indicted based on inadequate or incompetent evidence. *Costello v. United States*, 350 U.S. 359, 363 (1956). Defendant contends that the grand jury indicted based on the Government's inaccurate legal theory about the invalidity of the Charged Deed. However, as the Court has held, the indictment still charges mail fraud and bank fraud even if the Charged Deed is valid, and accordingly this objection is overruled.

However, the Court pauses here to note that there is a risk of prejudice in the Government's presentation of its case as is. The purpose of the Charged Deed, including Defendant's reasons for backdating the deed, is a question for the jury that can be answered independently of the deed's legal effect. If the Government persists in referring to the deed as the "Fraudulent Deed" and making conclusory arguments about the deed's validity, it runs the risk of confusing the jury into thinking that backdating the deed, in and of itself, was mail fraud. (*See, e.g.*, SSI ¶ 6) ("In connection with his contribution of the property to this new company, Kight

represented to R.K. in December 2010 that his wife still held title to 400 Glen Arden Place, **even though Kight knew that was untrue**.") The Court will take up this issue further in connection with the pretrial conference.

## III. Conclusion

For the above reasons, Defendant's Objection [Doc. 223] is **OVERRULED** and the Magistrate Judge's R&R [Doc. 217] is **ADOPTED.** Defendant's Motion for Production of Grand Jury Transcripts [Doc. 34], Motion in Limine to Exclude the Opinions and Testimony of Robert Danforth [Doc 164], Motion to Dismiss Counts One and Two of His Superseding Indictment [Doc. 177], Motion to Dismiss Second Superseding Indictment [Doc. 196], and Renewed Motion in Limine to Exclude the Opinions and Testimony of Robert Danforth [Doc. 205] are **DENIED**. The Court will set a pretrial conference and trial date by separate order when public health conditions enable the Court to safely conduct a criminal jury trial. Time shall be excluded from computation under the Speedy Trial Act pursuant to the Court's Sixth Amendment to General Order 20-01 re: Court Operations Under the Exigent Circumstances Created by COVID-19 and Related Coronavirus [Doc. 233] as well as any subsequent amendment to General Order 20-01.

**IT IS SO ORDERED** this 25th day of August, 2020.

**Honorable Amy Totenberg**
**United States District Judge**